THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CHARLES BYRD *et al.*, Defendants-Appellants.

First District (4th Division)   Nos. 1—87—0949, 1—87—1057 cons.

Opinion filed December 6, 1990.—Rehearing denied January 7, 1991.

Randolph N. Stone, Public Defender, of Chicago (Karen E. Tietz, Assistant Public Defender, of counsel), for appellant Charles Byrd.

Michael J. Pelletier and Patricia Unsinn, both of State Appellate Defender's Office, of Chicago, for appellant Larry Watts.

Cecil A. Partee, State's Attorney, of Chicago (Renee Goldfarb, David R. Butzen, and Michele I. Lavin, Assistant State's Attorneys, of counsel), for the People.

JUSTICE JOHNSON delivered the opinion of the court:
After a jury trial, defendants, Charles Byrd and Larry Watts,

were found guilty of aggravated criminal sexual assault. (Ill. Rev. Stat. 1985, ch. 38, par. 12—14(a)(2).) Defendant Watts was sentenced to 10 years and defendant Byrd was sentenced to eight years to be served in the Illinois Department of Corrections.

On appeal, defendant Watts seeks reversal of his conviction and remand for a new trial or remand for a new sentencing hearing or reduction of his sentence to a term of eight years. Defendant Byrd seeks reversal of his conviction or reversal of his conviction and remand for new trial or remand of the cause for a new sentencing hearing.

Watts raises the following issues for review: (1) whether the State's expert witness rendered an opinion on an ultimate issue that was outside of her expertise; (2) whether the cumulative effect of alleged prosecutorial misconduct deprived him of a fair trial; (3) whether he was denied due process when the trial judge considered statements contained in complainant's impact statement; and (4) whether his 10-year sentence was grossly disparate to the eight-year sentence imposed upon his codefendant.

Byrd raises essentially the same issues, with the exception of the last issue raised by Watts. However, in addition, Byrd raises the following issues: (1) whether the evidence was sufficient to prove him guilty beyond a reasonable doubt, and (2) whether the trial court erred in instructing the jury on an accountability theory.

We affirm.

At trial, complainant testified that on July 20, 1985, at approximately 2 a.m., complainant began walking home after visiting Beverly Smith, one of her friends. Beverly walked part of the way with complainant. Complainant testified that in the vicinity of 39th Street and Cottage Grove Avenue, in Chicago, she stopped to talk with two male acquaintances. Shortly thereafter, Watts, who was driving a car, saw complainant and honked his car horn to attract her attention. Byrd was riding in the car with Watts as a passenger. Watts parked his car across the street from where complainant stood. He got out of the car to talk with her. He identified himself as a friend of complainant's mother.

After conversing with Watts, complainant agreed to join him in the car; she sat in the front seat and Byrd moved to the back seat. Complainant then asked for a drink. En route to Byrd's apartment, the parties stopped at a liquor store where Watts purchased a six-pack of beer and a package of cigarettes. Upon their arrival, Byrd and Watts went to the back of the apartment to talk while complainant stayed in the front of the apartment. Watts then invited com-

plainant to join him in the rear of the apartment. When she refused, Watts grabbed complainant and pulled her into one of the rear bedrooms. Byrd, in the meantime, situated himself in another room in the apartment.

Once inside of the bedroom, Watts told complainant to disrobe. When complainant asked Watts to repeat what he had said, he struck her in the face with his fist. Complainant screamed when he hit her. Byrd, who was in another room, asked if Watts was hitting her. Complainant responded that Watts was not hitting her. Watts then struck complainant a second time and told her to take off her clothes. Watts then proceeded to have vaginal and oral intercourse with complainant.

Shortly thereafter, Byrd entered the bedroom. He was nude when he entered the room. Watts then told complainant to tell Byrd to put his penis into her anus. Although complainant complied with this order, Watts struck her again.

After this act and at complainant's request, she was allowed to go to the bathroom. Both Watts and Byrd later joined her in the bathroom and forced her to have oral intercourse with both of them. Watts then poured beer and shampoo into complainant's hair and asked whether she liked what he had done. When complainant answered, he slapped her and stated, "When I ask you something you answer by, yes, ma'am [sic]." Watts struck her again and she responded as she was told.

Both Watts and Byrd were in the bathroom with complainant while she bathed. Eventually, Watts left complainant alone in the bathroom with Byrd. Byrd proceeded to wash complainant's hair. He then took her into the bedroom and had vaginal intercourse with her. After Byrd completed this act, complainant noted that she was bleeding from the vaginal area. Byrd forced complainant to wipe the blood from his penis and offered her a sanitary napkin. Subsequently, complainant dressed and managed to escape from the apartment.

Once out on the street, about one block away from Byrd's apartment, complainant saw a security guard. The guard testified that when complainant approached him at approximately 4 a.m. on July 20, 1985, she asked whether he had a telephone. He noticed that she was badly shaken and crying. He also noticed swelling in the area of her forehead and blood on her mouth. The guard called the police as complainant was too distraught to make the call.

When the police arrived, they proceeded directly to Byrd's apartment. Byrd was arrested outside of his apartment. Watts was arrested inside of the apartment. After being advised of their *Miranda*

rights, Watts told the officers that he did not rape complainant because he "did not come in her."

Complainant was taken to the hospital and received treatment for edema, bruises around both eyes and cheekbones, and abrasions on her buttocks and thighs. The treating physician also found that complainant's bleeding was due to a four-inch V-shaped laceration on the left side of her vagina.

Byrd testified in his own behalf. He stated that complainant flagged them down while he and Watts were driving in the vicinity of 39th Street and Cottage Grove Avenue. As they drove around the area, they drank liquor and smoked an hallucinogenic drug. Watts then asked complainant to "turn him on." She agreed to do this for a fee of $45. The parties then proceeded to Byrd's apartment. Complainant was allegedly paid before entering the apartment building.

According to Byrd, the parties entered the apartment at approximately 1:50 a.m. After drinking beer and smoking marijuana, Watts and complainant went into one of the bedrooms. Byrd smoked marijuana and watched television in another room in the apartment. Subsequently, he was called into the bedroom with Watts and complainant. At that time, complainant stated, "Come on, [i]t's your time" and she then guided him in an act of anal intercourse. Thereafter, she had oral intercourse with him. After several minutes, complainant asked if she could take a bath. She went into the bathroom and began to run the water. Approximately 10 minutes later, Byrd entered the bathroom with a towel. He, at that time, noticed that complainant was bleeding. She explained that she must have begun her menstrual cycle. Byrd then gave her a sanitary napkin. He testified that he did not have vaginal intercourse with complainant after she took a bath.

Byrd further testified that complainant then went into the room occupied by Watts. After approximately three minutes, she left that room and went into another bedroom. Shortly thereafter, complainant left the apartment. Byrd dressed, after he heard her close the apartment door, and went in search of complainant. He stated that he went in search of her because he was concerned for her safety in a neighborhood in which she was unfamiliar. He was arrested shortly thereafter.

Watts testified that he picked up complainant while he and Byrd were en route to the liquor store. Complainant allegedly told Watts that it would cost each of them $25 to have sex with her. Watts subtracted $5 from the quoted amount to pay for the liquor complainant requested. The parties then proceeded to the liquor store. According

to Watts, complainant waited in the car while he and Byrd went into the store. When Watts came out, he saw complainant expose her breasts to some men. He struck her and told her not to expose her breasts again. Watts stated that complainant then exposed her breasts again and he struck her a second time. He also stated that he struck complainant twice during the entire incident.

Watts further testified that once they were inside of Byrd's apartment, complainant approached him and performed an act of fellatio. Thereafter, complainant told him to call Byrd into the room with them. She then guided Byrd in an act of anal intercourse with her. According to Watts, after this act, complainant had oral intercourse with him. She then went into the bathroom to bathe. Approximately 20 minutes later, Watts saw complainant getting dressed. After dressing, she asked for some money but then stated, "That's all right," and left the apartment. He was arrested sometime thereafter.

At the conclusion of the evidence, the jury found defendants guilty of aggravated criminal sexual assault. The court then imposed sentence. It is from this decision that defendants appeal.

Defendants first argue that reversible error was committed when the trial court allowed an expert witness to render an opinion that was outside of her area of expertise. At trial, Dr. Katherine Wenstrom testified that in her opinion complainant sustained vaginal injuries as a result of nonconsensual intercourse. Defendants argue that this testimony invaded the province of the jury and was based upon mere conjecture and factors outside of her expertise. Defendants contend that Dr. Wenstrom's testimony did not aid the jury in its determination of whether the acts complained of were nonconsensual. Defendants further contend that the expert testimony was improperly based upon either the doctor's identification of the type of trauma sustained or it was based upon the expert's assessment of complainant's credibility.

The State, on the other hand, maintains that this expert's testimony was within the province of the jury since her testimony concerned scientific matters that were generally beyond the jury's experience. Moreover, this testimony, the State argues, is not inadmissible as it is simply an expression of her opinion. We agree.

Dr. Wenstrom, who is trained in both obstetrics and gynecology, has examined 40 to 50 victims of sexual assault. She was also one of complainant's treating physicians. Dr. Wenstrom testified that although the vagina is a soft, stretchable organ that can accommodate a baby, the injuries complainant sustained must have been the result of nonconsensual intercourse. This opinion was based upon the exten-

siveness of the injuries; complainant had a four-inch laceration in her vagina. Dr. Wenstrom also testified that complainant had sustained injuries to her head.

The basis for an expert's opinion may properly include not only medical evidence concerning the nature and extent of injuries sustained but also the surrounding circumstances of the crime. (*People v. Harris* (1989), 132 Ill. 2d at 366. An expert may also testify on an ultimate issue in a case. *Harris*, 132 Ill. 2d at 385.

Dr. Wenstrom's credentials as an expert were not contested. The fact that her opinion may have been based upon the identification of the type of trauma sustained by the complainant or the extensiveness of her injuries does not render her testimony improper. (*Harris*, 132 Ill. 2d at 385.) Moreover, after reviewing the transcript of Dr. Wenstrom's testimony, we do not find that her opinion was necessarily based upon the credibility of the complainant to any extent. The error, if any, therefore, would not warrant reversal of this cause. The jury in this case was free to accept or reject the opinion of this witness.

Further, expert testimony is admissible when the subject matter is beyond the experience of common laypersons. (*People v. Cole* (1988), 170 Ill. App. 3d 912, 929.) Dr. Wenstrom's testimony aided the jury in understanding the pliability of the vagina and the type of trauma that must be inflicted which would be indicative of nonconsensual sexual intercourse. We, therefore, do not find that the trial court erred in admitting the testimony of Dr. Wenstrom.

Next, defendants argue that the cumulative effect of prosecutorial arguments denigrating the presumption of innocence, attacking defense counsel, and encouraging the jury to engage in unsupported speculation deprived them of a fair trial. The State contends that this issue was waived for review as defendants did not specifically raise this issue in their post-trial motions. An alleged error may properly be preserved for review where both an objection is made at trial and the issue is raised in the defense's post-trial motion. (*People v. Enoch* (1988), 122 Ill. 2d 176, 186.) We agree with the State that this issue was waived for our review.

Even assuming, *arguendo*, that this issue had not been waived, we find the error, if any, would not warrant reversal of defendant's convictions. Where numerous instances of misconduct are alleged, a court of review may consider the cumulative effect of the comments rather than assess the prejudicial effect of each isolated comment. (*People v. Whitlow* (1982), 89 Ill. 2d 322, 341.) Great latitude is afforded to attorneys in closing arguments. (*People v. Frank-*

*lin* (1976), 42 Ill. App. 3d 408, 421.) Reversal error may be found where improper argument substantially prejudices the defendant. *People v. Cregar* (1988), 172 Ill. App. 3d 807, 825-26.

In the instant case, the evidence against defendants was overwhelming. In reviewing the record, including the remarks that defendants complain of, we do not find that defendants were denied a fair trial. Defendants were not so prejudiced as to warrant a reversal.

■ Next, defendants argue that they were denied due process when the trial judge considered statements contained in the complainant's impact statement. Moreover, defendants argue that they were not provided with a viable opportunity to rebut the claims made in the report.

At defendants' sentencing hearing, the victim impact statement was offered by the State. Contained in the report was the following statement by complainant:

> "The crime affected my plans to attend school. I was planning to start school in September of 1986 but because I was so upset about the crime I was unable to enroll. I could not concentrate on anything for a long time after the crime."

Defendants argue that this statement was contradicted by the complainant at trial and should not have been considered, as it was unreliable. The trial court stated that it would give the victim impact statement the same weight as it would give the presentence report. At trial, in January 1987, the complainant testified that she was attending Midwest Women's Center and studying nursing. Defendants contend that their requests for discovery and cross-examination to test the veracity of the statement should have been granted.

We do not find that the victim impact statement and complainant's testimony were necessarily inconsistent. As the State argues, the fact that she was too emotionally distraught to enroll in school in September 1986 does not mean that she would never be able to enroll in school. Since this statement was not necessarily inaccurate, we do not find that an error was committed in the trial court's consideration of this statement.

Even assuming, *arguendo*, it was error to admit the victim impact statement, we do not find that the trial court gave a great deal of weight to the statement in question. Byrd received an eight-year sentence. Watts received a 10-year sentence. The commission of the crime of which they were convicted carries the potential sentence of 6 to 30 years. (Ill. Rev. Stat. 1985, ch. 38, par. 1005—8—1(a)(3).) If the commission of the offense is accompanied by heinous or brutal

behavior indicative of wanton cruelty, an extended term of 30 to 60 years could be imposed. (Ill. Rev. Stat. 1985, ch. 38, pars. 1005—5—3.2(a)(2), (b)(2).) As the State points out, the sentences were well within the statutory minimum. The error, if any, under the circumstances of this case would be harmless.

Finally, Watts argues that his 10-year sentence is grossly disparate to the eight-year sentence imposed upon his codefendant. Watts points out that he had no prior criminal conviction, while Byrd, alone, had a prior felony conviction. Watts was, however, placed on supervision on a charge of unlawful use of a weapon.

■■ ■ The imposition of a sentence is a matter of judicial discretion and, absent an abuse of discretion, the reviewing court may not alter the sentence of the trial court. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 153.) "The Constitution permits qualitative differences in meting out punishment and there is no requirement that two persons convicted of the same offense receive identical sentences." (*Williams v. Illinois* (1970), 399 U.S. 235, 243, 26 L. Ed. 2d 586, 594, 90 S. Ct. 2018, 2023.) "[D]isparity in sentencing between codefendants, without more, does not warrant a reduction of the punishment imposed by the trial court." *People v. Riddle* (1988), 175 Ill. App. 3d 85, 92.

■■ The record reveals that the trial court properly considered all of the aggravating and mitigating factors presented by counsel. The record also reveals that Watts initiated the encounter between defendants and complainant. Watts also admitted to having struck complainant twice. The trial judge remarked that he was particularly disturbed with Watts' denigration of the complainant. We do not find that the trial court abused its discretion in sentencing Watts to a term of 10 years.

■■ ■ Byrd raises two additional issues. First, he contends he was not proved guilty beyond a reasonable doubt of the charge against him, because complainant's testimony was not clear and convincing. However, the standard to be used in reviewing the sufficiency of evidence in all criminal cases is proof beyond a reasonable doubt, whether the evidence is direct or circumstantial. (*People v. Pintos* (1989), 133 Ill. 2d 286, 291.) "We will no longer require that in a case in which a sex offense is charged, the State must demonstrate either the victim's testimony is clear and convincing or substantially corroborated to prove guilt beyond a reasonable doubt." (*People v. James* (1990), 200 Ill. App. 3d 380, 394.) It is not the function of a court of review to retry the defendant. (*People v. Phillips* (1989), 127 Ill. 2d 499, 509.) It is the function of the trier of fact to

determine the accused's guilt or innocence; a court of review will not reverse the conviction unless the evidence is so improbable as to justify a reasonable doubt of the defendant's guilt. *Phillips*, 127 Ill. 2d at 509-10.

■■ In the instant case, the evidence was not so improbable as to warrant a reversal of defendant Byrd's conviction. Byrd was found guilty beyond a reasonable doubt of aggravated criminal sexual assault. Sexual assault is committed when sexual penetration is committed by force or threat of force. Ill. Rev. Stat. 1985, ch. 38, par. 12—14(a)(2).

Complainant testified that Byrd forced her to have oral, anal, and vaginal intercourse with him. She sustained injuries as a result of her encounter with defendants. As the State notes, complainant did not notice any bleeding until after Byrd had engaged in vaginal intercourse with her. We, therefore, find that the evidence was sufficient beyond a reasonable doubt to support Byrd's conviction.

■■ Next, defendant Byrd argues that the jury was improperly instructed on the law of accountability. He contends that there was no evidence presented to support this theory. A defendant may be held legally accountable for a crime when "[e]ither before or during the commission of an offense, and with the intent to promote or facilitate such commission, he solicits, aids, abets, agrees or attempts to aid, such other person in the planning or commission of the offense." (Ill. Rev. Stat. 1985, ch. 38, par. 5—2(c).) The slightest evidence upon a theory of accountability would warrant giving the jury the instruction. *People v. Jarvis* (1987), 158 Ill. App. 3d 415, 430.

■■ ■ In the instant case, complainant testified that she was forced to commit various sexual acts with both defendants. Byrd admitted to having had sexual intercourse with complainant even though, according to Byrd, the acts were consensual. The jury evidently found complainant's testimony to be more credible. A court of review will not substitute its judgment for that of the trier of fact where the evidence is conflicting. (*People v. Woods* (1980), 81 Ill. 2d 537, 542.) Therefore, an instruction on accountability theory would be harmless beyond a reasonable doubt, as Byrd actually participated in the commission of the crime. He did not merely promote or facilitate Watts in the commission of this offense.

■■ Even if Byrd had not forced complainant to have intercourse with him, he may still be held on an accountability theory. A defendant may be held accountable for aggravated criminal sexual assault if he was aware of the commission of the offense even though there was no actual participation in the act. (*People v. Jones* (1989),

184 Ill. App. 3d 412, 431.) Under the circumstances of this case, we also find that Byrd must have been aware of the violent encounter between Watts and the complainant. Complainant sustained visible facial injuries. Byrd even inquired, at one point, whether Watts had been hitting her. Defendant Byrd's argument simply fails with respect to this issue.

Accordingly, the decision of the circuit court is affirmed. As part of our judgment, we grant the State's request that defendants be assessed $75 as costs and fees for this appeal, pursuant to *People v. Agnew* (1985), 105 Ill. 2d 275, and *People v. Nicholls* (1978), 71 Ill. 2d 166.

Affirmed.

McMORROW, P.J., and JIGANTI, J., concur.