THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. WARREN A. JUDGE III, Defendant-Appellant.

First District (4th Division)   No. 1—89—2001

Opinion filed October 24, 1991.

Josette Skelnik, of Robinson & Skelnik, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Kenneth T. McCurry, and Judith Hannah, Assistant State's Attorneys, of counsel), for the People.

JUSTICE JOHNSON delivered the opinion of the court:

Following a bench trial, defendant, Warren Judge III, was convicted of aggravated criminal sexual assault (Ill. Rev. Stat. 1987, ch. 38, par. 12—14(b)(1)) and sentenced to 10 years' imprisonment. On appeal, he contends that he was not proved guilty beyond a reasonable doubt and was denied a fair trial by the prosecutor's introduction of improper evidence at trial and improper closing argument.

We reverse.

Complainant, who was seven years old at trial, testified on direct examination that defendant was living in her family's trailer home during the date the alleged incident occurred. She further testified that on April 4, 1988, at approximately 5 a.m., she and her younger sister were on the living room couch watching cartoons on television. Complainant testified that defendant "dragged [her] from the couch across the floor and into his bedroom." She further testified that defendant threw her on his bed where he "touched [her] private parts, and rubbed [her] vagina." Complainant also indicated to the court on an anatomically correct doll where defendant touched her vaginal area. She further testified that defendant had touched and hurt her on four or five previous occasions when she was in kindergarten.

On cross-examination, complainant testified that her father was asleep in his bedroom and that her mother was out delivering newspapers during the time this incident occurred. Complainant said her sister was sitting on the couch watching cartoons, but did not see her being dragged by defendant. Complainant also said that when defendant touched her with his finger she felt pain but did not scream or yell because defendant threatened to kill her entire family except her. Complainant further testified that she had a red rash around her vaginal area prior to the alleged incident with defendant and would often apply an ointment in and around her vagina. She stated that she felt pain when she applied ointment to her vaginal area.

Dr. Andreas Seidler testified on direct examination that he met complainant and her mother in the emergency room of a local hospital. He said that he had asked complainant what happened and complainant said that she had been touched in her private parts with an index finger by defendant. He further testified that upon his physical examination he observed a redness around the vaginal orifice, which he considered an "abnormal condition." According to the physician, "there was no vaginal discharge, nor did there appear to be any trauma in the orifice to the vagina." He then stated that after examining complainant he had the impression of "alleged sexual abuse."

Upon cross-examination, Dr. Seidler testified that he was not informed during the examination that complainant had a rash in her genital area and had applied ointment to the area herself prior to the alleged sexual abuse. Upon further questioning, Dr. Seidler said that depending on the ointment used, it was not only possible, but even probable, that the application of a particular ointment could have caused the degree of redness as well. The physician stated that the

abnormal condition he observed could have also been caused by a little girl inserting her own index finger. Dr. Seidler testified that he had not noticed any bruises on complainant's arms or wrists. He also said that he had not seen "any abrasions or any trauma that had broken the skin." On further redirect examination, Dr. Seidler stated that his knowledge of the application of specific ointments would not have changed his impression of sexual abuse.

Complainant's mother testified on direct examination that defendant moved into their trailer home to solve mutual financial problems. She stated that on April 5, 1987, she questioned complainant regarding any possible sexual misconduct toward her by defendant. She also stated that complainant told her that defendant touched her private parts and put his finger inside her. Upon cross-examination, complainant's mother testified that she asked complainant twice whether defendant had improperly touched her before complainant answered in the affirmative. She also stated that complainant did not seem upset on the morning of the alleged incident. The witness further testified that her daughter had experienced a sporadic rash ever since infancy and that complainant applied ointment to the area more often when defendant lived in their home. The witness also stated that she did not watch her daughter apply the ointment nor did she inspect complainant to determine the condition of the rash. Upon further cross-examination, the witness stated that she herself had been sexually abused as a young child. In addition, the parties stipulated that complainant's mother had occasion to make a report on another person's child as being the victim of sexual abuse. The man accused in that incident was cleared of all charges.

Defendant testified on direct examination that he rented a room from complainant's family. He stated that on the evening before the alleged incident occurred he went to the home of his girl friend (Doreen Girts) and stayed until approximately 1:30 a.m. He returned home at about 2 a.m. where he prepared for bed and went to sleep. He stated that he woke up at 10:30 a.m. and went to work with complainant's father. When he returned home, he was taken into custody by the police and questioned at the police station. He was then released and returned to the trailer home, where he spent the night. He stated that he stayed with his mother the following day. Defendant also testified that he never touched complainant's private parts.

Upon cross-examination, the prosecutor elicited from defendant the fact that, as the oldest boy in a family of two brothers and six sisters, he "grew up with younger girls around the house all the time." He asked defendant whether any of the foster children his

mother took into his home were girls who were younger than he, to which defendant answered in the affirmative. The prosecutor then questioned defendant regarding whether he had sexual relations with his girl friend (Doreen Girts) when she was 15 years old. He also asked defendant if he had ever seen Doreen Girts in a bathing suit when she was 12 years old and had told his co-workers that he was excited by her. The prosecutor also asked defendant if throughout his life he had an attraction to younger girls or had been sexually interested in them. Finally, the prosecutor asked defendant if he had ever discussed sexually explicit matters with children and asked him if he was able to identify in court a young girl to whom defendant had made sexually explicit remarks. To each of these questions, defendant answered in the negative.

Eugene Stack, a police officer for the City of West Chicago, testified on behalf of defendant, whom he had known for some years. He stated that defendant had a spotless reputation for decency and morality. Upon cross-examination, Officer Stack stated that defendant had expressed an interest in becoming a police officer, and that he thought defendant would be a good one. He also said that it was his impression that defendant would have been interested in juveniles because of his background, which included living with foster children. The prosecutor asked Officer Stack whether girls younger than 13 years of age had been placed in the Judge home as foster children.

Barry Skinner was called next as a witness on behalf of defendant. On direct examination, Mr. Skinner testified that he too had known defendant for many years and that his sister had been a foster child in the home of defendant's mother when she was 14 years of age. He said that defendant helped him coach youth football for one year and also supervised camp-outs for youngsters who were six to nine years old. Skinner further stated that defendant was "highly reputable, honest and Christian," and that "he was a decent person, a law-abiding person."

Doreen Girts testified that she had known defendant since she was 14 years old and that defendant had never seen her in a bathing suit when she was 12 years old. She said that defendant had asked permission to date her from her mother. Ms. Girts said that defendant had left her home at about 1 a.m. on the date of the alleged incident. Upon cross-examination, Ms. Girts said that she had discussed marriage with defendant when she was 16 years old, and that complainant's mother had told her to stay away from defendant.

The State called Denice Angel, the girl who had been presented to defendant in the courtroom for identification, as a rebuttal witness.

Ms. Angel, who was 13 years old at the time of trial, testified that she knew defendant because she baby-sat for complainant's family. The witness stated that when she was 12 years of age defendant asked her "how far [she] went with a guy, if [she] kissed him and if a guy ever felt [her] up." She also stated that defendant had told her that "he wanted to lay down and sleep with [her]" and that he was serious about this question. Ms. Angel further testified that defendant told her that "he wanted [her]," but that he did not touch her or her girl friend, who was present during this conversation.

Complainant's father was then called as a rebuttal witness on behalf of the State. He said that he had attempted to arrange dates for defendant, but defendant had said that most of the girls were too old for him. Upon cross-examination, the witness said that the girls whom he had tried to introduce to defendant were "definitely above the age of sixteen."

The State then presented its closing argument. The prosecutor stated that complainant's testimony had been clear and convincing, which is "sufficient to formulate the conviction of guilt according to the reasonable doubt standard." During his closing argument, the prosecutor made the following comments:

> "I find it quite interesting, Judge, that there is a continuous stream of Warren's involvement with children. I find it quite interesting, Judge, his personal background. That is not presented to the court [sic] any aspersions on Mr. Judge, but it only fills in the blanks and the total profile of Warren Judge.
> ***
> Something's wrong because the man who testifies that he has no interest in children, evidently, in this case has been shown to have a consistent interest in young children. And to put himself in positions with young children where they're accessible to him."

The prosecutor also stated that "a person with no motive at all, a 12-year-old girl gets up on the stand and proves that everything that Warren Judge said to that regard is a lie." He also stated that there was corroboration of complainant's testimony by the physician testifying in this case.

The trial court ruled that complainant's testimony was "clear and convincing" and that Dr. Seidler's medical findings and diagnosis of "alleged sexual abuse" corroborated that testimony. At the sentencing hearing on June 9, 1989, defendant received a sentence of 10 years' imprisonment.

In his post-trial motion, defendant stated that the finding of guilt was not supported by proof beyond a reasonable doubt and was contrary to the weight of the evidence. Defendant also stated that he was denied a fair trial by the State's repeated, unsupported, and irrelevant innuendos suggesting that he was sexually attracted to young girls. At the July 21, 1989, hearing on defendant's motion, he argued that the "doctor's testimony was not clear and convincing" and that the complainant's testimony had been influenced by having her "repeat the story over and over again" to numerous people. The prosecutor denied making innuendos. According to the prosecutor, defendant's testimony that he had no interest in or no previous encounters with any young girls was subject to impeachment. The court denied defendant's post-trial motion.

On appeal, defendant contends that he was denied a fair trial because of the prosecutor's repeated elicitation of evidence and argument to the court suggesting that defendant had an unnatural and perverted interest in young girls. The State contends that defendant waived objection to the admissibility of trial testimony by failing to object at trial. The State also maintains that assuming, *arguendo*, that the objection is not waived, the trial court properly admitted evidence and heard argument regarding defendant's unnatural interest in young girls because it was introduced by defendant.

Generally, an issue which has not been objected to during trial and raised in a post-trial motion is not preserved for appeal unless the issue is plain error. (*People v. Enoch* (1988), 122 Ill. 2d 176, 187.) Defendant contends that this issue should be reviewed under the plain-error doctrine (134 Ill. 2d R. 615(a)). "The purpose of the plain-error doctrine is to correct serious errors which may have denied the accused a fair trial. [Citation.] The doctrine will be applied in criminal cases if the evidence was closely balanced or the alleged error was so serious that it deprived defendant of a fair trial." (*People v. Priola* (1990), 203 Ill. App. 3d 401, 417.) Because the evidence is closely balanced in this case, we will review the prosecutor's conduct to determine whether defendant was denied a fair trial.

The State maintains that its cross-examination was proper for the purpose of rebutting evidence as to defendant's good character. Thus, the State contends, its repeated line of questioning as to whether defendant was brought up with younger girls around him, as to whether his mother took in female foster children who were younger than he, as to how old defendant's girl friend was when he met her and began dating her, as to whether throughout his life he had been

attracted to younger girls or had been sexually interested in them were all proper responses to defendant's direct testimony.

■ Contrary to the State's contention, defendant's testimony regarding his moral character did not permit the State to introduce evidence or to suggest that defendant had a sexual interest in young girls. "Particular acts of misconduct cannot be shown on cross-examination or in rebuttal, for the reason that it is unfair to force an accused to account for any past misconduct which is unrelated or at most only circumstantially related to the issues at hand." (*People v. Hall* (1987), 159 Ill. App. 3d 1021, 1027.) Most disturbing is that the State did not show defendant had a propensity to have improper relationships with young girls nor was it even established as true. We believe the State merely raised unsupported allegations of misconduct so as to substitute insinuation and innuendo for proof. See *People v. Littlejohn* (1986), 144 Ill. App. 3d 813.

The State's question as to whether defendant saw his girl friend in a bathing suit when she was 12 years old and was excited by her was not only denied by defendant, but his answer was corroborated by Girts, who testified that she did not even know defendant when she was 12 years old. This line of questioning, which was not supported by the record, served only to raise unfounded allegations of misconduct. In addition, we believe the State's questions as to whether defendant grew up with younger females in his home and was sexually attracted to them were intended to suggest that defendant was guilty of acts of misconduct with other children. This line of cross-examination was highly prejudicial and irrelevant. Moreover, the allegations were never proved by the State.

The record clearly establishes that the trial judge was influenced by the State's improper and inflammatory elicitation suggesting that defendant was guilty of similar acts against individuals other than the complainant. Because the probative value of the State's questioning was so greatly outweighed by its prejudicial effect, we find the State's conduct resulted in error which denied defendant a fair trial.

Defendant also contends that his conviction for aggravated criminal sexual assault must be reversed because the testimony of complainant was neither clear and convincing nor substantially corroborated by the evidence.

In Illinois, the standard applied in reviewing the sufficiency of evidence in all criminal cases is proof beyond a reasonable doubt. (*People v. Pintos* (1989), 133 Ill. 2d 286, 291.) This court has held that the reasonable doubt standard is equally applicable to sex offense cases. (*People v. Byrd* (1990), 206 Ill. App. 3d 996, 1006; *People v. Casiano*

(1991), 212 Ill. App. 3d 680, 689.) As such, a reviewing court must view the evidence in the light most favorable to the State and must determine whether a rational fact finder could have found the elements of a crime beyond a reasonable doubt. *Byrd*, 206 Ill. App. 3d at 1006.

▪ Contrary to defendant's contention, this court no longer requires the State to demonstrate that the victim's testimony is either clear and convincing or substantially corroborated to prove guilt beyond a reasonable doubt in a sex offense case. (*Byrd*, 206 Ill. App. 3d at 1006, citing *People v. James* (1990), 200 Ill. App. 3d 380, 394.) Notwithstanding defendant's contention, however, we find that the evidence in this case was insufficient to sustain his conviction beyond a reasonable doubt.

"[C]ognizant that conflicting testimony is to be resolved by the trier of fact" (*People v. Westfield* (1990), 207 Ill. App. 3d 772, 777), we do not believe the testimony of the seven-year-old complainant established defendant's guilt beyond a reasonable doubt. The State's evidence portrays that defendant was asleep at 2 a.m. when complainant's mother left the home. He awoke briefly sometime after 5 a.m. to commit the alleged sexual act against complainant, and then was back in bed asleep when complainant's mother returned home at 6 a.m.

Complainant testified that when defendant woke up at 5 a.m. he dragged her onto the floor from a couch into his room and threw her onto the bed, even though her father was in the trailer home during this time. In addition, this alleged activity did not appear to alarm or disturb her younger sister, who was awake and with complainant at the time. Yet, she made no complaint nor did she scream for assistance. Further, the record reveals that complainant did not seem upset an hour after the alleged sexual abuse occurred and that the original mention of any abuse was made in response to repeated questioning by her mother. Moreover, complainant's mother and the treating physician testified that they failed to see any noticeable marks or bruises on complainant's body, despite testimony that she was dragged across the floor and thrown onto defendant's bed.

Facts in the record also raise doubts as to the motives of complainant's mother. Not only was complainant's mother a victim of sexual abuse when she was a child, but she had previously accused another man of sexually abusing someone else's child. The man accused of such abuse by complainant's mother was later cleared of all charges. The fact that complainant would testify with such firmness and conviction, in light of all of the aforementioned considerations,

supports defendant's contention that complainant's testimony was improperly influenced.

Viewing the record as a whole, we believe complainant's testimony as to the circumstances surrounding the alleged sexual abuse seriously and substantially detracted from the reasonableness of complainant's story as a whole. (See *People v. Findlay* (1988), 177 Ill. App. 3d 903, 912.) We therefore find that complainant's testimony did not establish defendant's guilt beyond a reasonable doubt.

■ Further, we do not believe that complainant's testimony was corroborated by the physician's medical testimony. At the time of complainant's medical examination, the physician was not informed that complainant had a red rash and applied an ointment to her vaginal area prior to the alleged sexual abuse. Complainant testified that she would apply ointment inside her vagina, by putting cream on the tip of her finger and rubbing it around inside and outside her vagina, and that when she did this it would hurt. After learning of the condition, the physician agreed that it was not only possible, but even probable, depending on the ointment used, that complainant could have caused the irritation herself. Most disturbing is the fact that complainant's mother failed to inform the treating doctor or nurse of complainant's preexisting condition, thus preventing a complete and accurate diagnosis.

We therefore find that the physician's medical testimony did not corroborate complainant's testimony sufficient to find defendant guilty of sexual abuse beyond a reasonable doubt.

Because we find that defendant was denied a fair trial by the prosecutor's improper remarks and that the evidence did not establish defendant's guilt beyond a reasonable doubt, we reverse the judgment of the circuit court of Cook County.

Reversed.

LINN and McMORROW, JJ., concur.