COMMONWEALTH vs. TENEISHA HARRIS.

Hampden.    November 8, 1979. — May 14, 1980.

Present: HALE, C.J., GOODMAN, & GRANT, JJ.

*Robbery. Joint Enterprise. Assault. Practice, Criminal,* Directed verdict, Variance. *Pleading, Criminal,* Indictment.

Evidence at an armed robbery trial was sufficient to permit the jury to draw an inference that the defendant associated herself with the venture and participated to some extent in the commission of the robbery. [708-709]

At the trial of a defendant charged with assault and battery with a dangerous weapon, evidence that, after the victim had been robbed by the defendant and a joint venturer and while the victim was holding the defendant, another man appeared and stabbed the victim was insufficient to warrant a finding that the defendant participated in a joint venture to commit the assault and battery with the knife. [709-710]

The fact that an indictment charging the defendant with armed robbery with a knife was at variance with the evidence that the robbery was committed with a gun did not, in the circumstances, prejudice the defendant. [710-712]

INDICTMENTS found and returned in the Superior Court on October 19, 1976.

The cases were tried before *Alberti, J.*

*William J. Brown, Jr.,* for the defendant.

*William T. Walsh, Jr.,* Assistant District Attorney, for the Commonwealth.

GOODMAN, J. The defendant was convicted of armed robbery and assault and battery with a dangerous weapon. We affirm the judgment of conviction for armed robbery and reverse the judgment of conviction for assault and battery with a dangerous weapon.

1. *Armed robbery.* There was sufficient evidence when the defendant moved for a directed verdict at the end of the Commonwealth's case from which a rational jury could

have found beyond a reasonable doubt that the defendant was guilty of armed robbery. From the victim's testimony the jury could have found the following. About 2:45 A.M., on July 14, 1976, the defendant solicited a young man then about twenty years old (the victim), and they went to a room in a Springfield hotel. After the victim and the defendant spent about half an hour together the victim heard a whistle; the defendant then "put her shirt on and went to the . . . window and looked out." She then told the victim that her girlfriend wanted to talk to her in the hall, "[s]o she put her pants on and her jacket and walked out into the hall." In no more than ten seconds, a man entered with a gun and pointed it at the victim, who was still lying on the bed. The man with the gun (the robber) picked up the victim's pants and ran out the door. The pants contained a wallet with $275. As the robber was running out of the room, the victim jumped off the bed and gave chase. When the robber entered the hall, the defendant was waiting. (On cross-examination the victim testified that "she was standing right outside the door.") The robber and the defendant both started running and then separated, the defendant apparently turning into a corridor. The victim chased the robber through the hotel corridors until he suddenly came upon the defendant and grabbed her. The robber was at the stairs and turned when she said, "He got me." The robber stood there pointing the gun at the victim. The victim started approaching the robber, using the defendant as a shield; and when the victim got about ten feet away, the robber ran down the stairs. We conclude that the jury could draw the "common sense inference" (*Commonwealth* v. *Ronayne*, 8 Mass. App. Ct. 421, 425 [1979]) that "the defendant associated h[er]self with that venture and participated to some extent in the commission of that offence." *Commonwealth* v. *Benders*, 361 Mass. 704, 708 (1972). See *Commonwealth* v. *Burns*, 362 Mass. 875 (1972); *Commonwealth* v. *Blow*, 370 Mass. 401, 407-408 (1976).

2. *Assault and battery with a dangerous weapon.* As the robber ran down the stairs, another man came up the stairs.

He confronted the victim, who was still holding the defendant in front of him, stabbed the victim with a knife, and fled down the stairs. The victim then released the defendant ("[s]o I just pushed her down and kicked her, and she landed in the corner like") and walked back to the room for the rest of his clothes. The defendant and the man who had wielded the knife were apprehended an hour or so later, about 4:30 A.M., in the vicinity of the hotel. The jury could indeed have inferred that the two were friends — photographic negatives found in the hotel room were developed into prints of the man with the knife, and he came to the trial and spoke to the defendant. We conclude, though the question is a close one, that the bizarre and fortuitous circumstances of this case do not permit an inference that the man with the knife was part of a plan to commit the robbery. By the time he appeared on the scene, the robbery was over (see *Commonwealth* v. *Novicki*, 324 Mass. 461, 465 [1949]); and there was no additional evidence connecting the robber and the man with the knife. The Commonwealth's hypothesis that the man with the knife was stationed in the hotel to protect the defendant and the robber is speculative. *Commonwealth* v. *Fancy*, 349 Mass. 196, 200 (1965). *Commonwealth* v. *Perry*, 357 Mass. 149, 151-152 (1970). *Commonwealth* v. *Spina*, 1 Mass. App. Ct. 805 (1973). *Bailey* v. *United States*, 416 F.2d 1110, 1113-1114 (D.C. Cir. 1969). Cf. *Commonwealth* v. *Soares*, 377 Mass. 461, 471, cert. denied, 444 U.S. 881 (1979). Thus, the defendant cannot be said to have participated in a joint venture with the man with the knife so as to make her responsible for the assault and battery with the knife. *Commonwealth* v. *Clark*, 363 Mass. 467, 473 (1973). *Commonwealth* v. *Flowers*, 1 Mass. App. Ct. 415, 419 (1973). *Commonwealth* v. *Chinn*, 6 Mass. App. Ct. 714, 717 (1978). Cf. *Commonwealth* v. *Ferguson*, 365 Mass. 1, 9 (1974); *Commonwealth* v. *Scanlon*, 373 Mass. 11, 18-19 (1977).

3. *The armed robbery indictment.* In the circumstances of this case it is not material that the indictment for armed robbery reads "[t]hat [the defendant] being armed with a

dangerous weapon, to wit, a knife did . . . rob . . . ." The Commonwealth tried the case on the basis of the victim's unequivocal testimony that the underlying robbery was committed with a gun. Neither party noted the discrepancy between the indictment and the evidence, either at trial or before this court. Indeed, defense counsel at trial sought to persuade the jury that the robbery was committed with a knife in the hotel room where the victim was stabbed — all without the defendant's participation.[1]

Most importantly, this is not a case in which there is any danger that the defendant was convicted on a charge which was not submitted to the jury. Cf. *Cole* v. *Arkansas*, 333 U.S. 196, 201 (1948), in which the Supreme Court of the United States reversed a conviction where the defendants had been convicted at trial of one offense but the convictions had been affirmed by the Supreme Court of Arkansas on the basis of evidence in the record indicating that they had committed another offense on which the jury had not been instructed. Cf. also *Presnell* v. *Georgia*, 439 U.S. 14, 15-16 (1978); *Jackson* v. *Virginia*, 443 U.S. 307, 314-315 (1979). See G. L. c. 278, § 2. See also *Commonwealth* v. *Camelio*, 1 Mass. App. Ct. 296, 302 (1973). Here the judge's charge carefully distinguished between the defendant's participation in assault and battery with a dangerous weapon and her participation in an armed robbery ("[a]nd you'll deal with them [the charges] one at a time"). Thus the court said: "The operative words are: did the defendant participate, one, in an assault by means of a dangerous weapon, to wit a knife; two, armed robbery in the amount or value of $275.00, the property of [the victim] — and the assault and battery also is against [the victim]."[2]

---

[1] He pointed out, in support of this theory, a notation in the hospital record (the victim had required hospitalization as a result of the stab wound) that the victim "was stabbed with a knife . . . during a fight in his hotel room on the night of admission." Trial counsel thus sought to cast doubt generally on the victim's testimony as to the defendant's participation. The jury could, of course, have accepted this version and still believed the rest of the victim's testimony as to the defendant's complicity.

[2] The judge's charge also instructed the jury: "The only important thing is: was there a somebody else who was involved in armed robbery,

As we read the charge, it fairly placed before the jury the issue whether the defendant participated in an "armed robbery" committed in the defendant's room by a male accomplice. Cf. *Commonwealth* v. *Edelin*, 371 Mass. 497, 520-521 (1976). The particular type of weapon with which the armed robbery was committed was not an essential element of the crime. See *Commonwealth* v. *A Juvenile*, 365 Mass. 421, 440 (1974); *Commonwealth* v. *Jordan*, 207 Mass. 259, 266-267 (1911), aff'd, 225 U.S. 167 (1912); G. L. c. 277, § 21. See also G. L. c. 265, § 17.

4. *Motion for a new trial.* The record in this connection contains only a three-line motion that the defendant "was denied a fair and unbiased trial." The one-paragraph contention in the brief does not rise to the level of argument and we do not discuss it further. We have, however, examined the transcript to assure ourselves that there is no risk of a miscarriage of justice. See *Commonwealth* v. *Freeman*, 352 Mass. 556, 564 (1967). We find no such risk. See *Commonwealth* v. *Simon*, 6 Mass. App. Ct. 894, 895 (1978).

Accordingly, the judgment on indictment no. 76-4249 is affirmed; and the judgment on indictment no. 76-4250 is reversed, the verdict is set aside, and judgment on that indictment is to be entered for the defendant.

*So ordered.*

---

who was involved in assault and battery with a dangerous weapon, and did she participate with that person in it, or them.

"The guilt of the defendant is established when it is shown, in this case, that she assisted the principal, that is the guy with the knife in his hand or the gun in his hand, and that she did this sharing with the principal the mental state required for that crime. Therefore, the Commonwealth must prove that the defendant possessed the specific intent required for the specific crime." (He had charged fully on the elements of each crime.)