COMMONWEALTH *vs.* GARY GUY
(and eight companion cases[1]).

Suffolk. September 10, 1987. — October 7, 1987.

Present: GREANEY, C.J., GRANT, & BROWN, JJ.

*Rape. Evidence,* Fresh complaint.

Where a female was forced by two male defendants to penetrate the vaginas of two other females with her tongue, such sexual acts constituted rape of the first female by the defendants within the meaning of G. L. c. 265, § 22 (*a*). [785-787]

At a rape trial, the testimony of two police officers as to the victim's statement to them three days after the sexual assault was properly admitted under the fresh complaint doctrine, where the evidence of the circumstances, including the victim's fear of the defendants, by whom she had been confined and tortured, warranted the judge in concluding that the statement had been made with reasonable promptness. [787-788]

At the trial of indictments for aggravated rape and other serious crimes, there was no reversible error in the admission, under the fresh complaint doctrine, of a police officer's testimony including certain details of the victim's statement which were not part of her testimony concerning the sexual assault, where the judge correctly instructed the jury as to the corroborative nature of the testimony, in terms strictly limiting it to the sexual assault charges. [788]

INDICTMENTS found and returned in the Superior Court Department on February 15, 1985.

The cases were tried before *Robert W. Banks,* J.

*Bernard Grossberg* for James N. Fitch.

*John F. Wood, Jr.,* for Gary Guy.

*Phyllis Broker,* Assistant District Attorney, for the Commonwealth.

GREANEY, C.J. A jury in the Superior Court convicted the defendants of kidnapping, assault and battery by means of a

---

[1] Four of the companion cases are against Gary Guy and four are against James N. Fitch.

dangerous weapon, and two counts of aggravated rape. The defendant Guy was also convicted of deriving support from the earnings of a prostitute. Although they have appealed from all their convictions, the defendants have briefed only questions pertaining to the aggravated rape convictions. They argue (1) that the acts relied upon by the prosecution to prove rape (that the victim was forced to perform cunnilingus on two women) do not constitute rape and (2) that there was error in the admission of, and jury instructions on, the fresh complaint evidence. We affirm the convictions.

The jury's verdicts indicate acceptance of evidence in the prosecution's case which disclosed the following. The victim, seventeen at the time of trial, began working in 1984 as a prostitute in St. Louis. While there she met the defendant Guy, who later became her pimp. The victim became acquainted with the defendant Fitch when she and Guy were in Washington. On January 12, 1985, the victim came to Boston to engage in prostitution for Guy in the "Combat Zone." In Boston, she met two other prostitutes, Arvivian Pampkin and Anjannette Blake, who were also known to the defendants. While in Boston, the victim earned some $400 for one night's work as a prostitute, which she failed to turn over to Guy. Instead, she used part of the money for travel fare to New York, where she intended to engage in prostitution with a new pimp, "J.D."

Instead of staying in New York, the victim returned to Boston on January 17, 1985. The defendants found her on the streets and kidnapped her. She was brought to a room in a motel where she was beaten, physically abused, and tortured by the defendants. The next day (January 18th), after additional beatings and torture, the victim was taken by the defendants (and another pimp) to an apartment. She was subjected to further abuse and was eventually compelled by the three men to engage in oral sex with both Arvivian Pampkin and Anjannette Blake, both of whom consented. The victim testified that the defendants forced her to penetrate first the vagina of Pampkin and then the vagina of Blake with her (the victim's) tongue.

After those sexual acts, the defendants returned the victim to the streets to engage in prostitution. On January 21, 1985, she made contact with the police and disclosed what had happened to her. The defendants were immediately identified and arrested.

1. The rape charges were sent to the jury solely on the theory that the defendants had participated in a joint enterprise with Pampkin, Blake, and the third pimp to force the victim to perform cunnilingus.[2] The defendants concede that there was sufficient evidence to warrant the jury in finding that they had engaged in a joint enterprise which, among other things, included forcing the victim to perform cunnilingus on both Pampkin and Blake. They also concede that the trial judge correctly instructed the jury on the elements of joint enterprise and aggravated rape. Our examination of the evidence and the jury instructions discloses that the concessions are proper. There is adequate evidence of the defendants' participation in a joint enterprise, and the jury intructions state clearly and correctly the legal principles involved in joint enterprise and aggravated rape.[3]

The defendants argue that the acts recounted by the victim (the penetration by tongue of the vaginas of Pampkin and Blake) did not violate G. L. c. 265, § 22 (*a*), as matter of law, because the acts (as the defendants' joint brief states the proposition) "did not involve the penetration of the victim's genital or anal opening or penetration of the victim by a sexual organ. The penetration here was by the victim into [Pampkin and Blake]." In support of their argument, the defendants refer to decisions in which unnatural sexual intercourse occurred, pointing out that the facts in those cases involved penetration of the

---

[2] Pampkin and Blake were also indicted for rape. Their cases were ordered to be tried separately from the cases of these defendants.

[3] There was no objection by the defendants' trial counsel to the legal correctness of the instructions to the jury on either of those subjects.

[4] The defendants filed motions for required findings of not guilty at the trial which raised the point of insufficiency of the evidence to prove rape. The motions were both denied.

victim's body by the defendant.[5] The defendants conclude that, unless the act of cunnilingus involves penetration of the vagina of the person named in the indictment as the victim, it cannot be rape.

General Laws c. 265, § 22 (*a*), as appearing in St. 1980, c. 459, § 6, provides that "[w]hoever has . . . unnatural sexual intercourse with a person, and compels such person to submit by force and against his will, or compels such person to submit by threat of bodily injury" shall be guilty of rape. Absent from the statute is any requirement that the unnatural sexual intercourse be performed or committed "on" or "upon" the person named as the victim in the indictment. In addition, there is no requirement that the sexual contact involve penetration of the victim by the perpetrator. There is nothing, therefore, in the words of G. L. c. 265, § 22 (*a*), which supports the defendants' argument. The statute refers simply to forced unnatural sexual intercourse as an act punishable as rape.

Nor does the defendants' argument receive support in the decisions relied upon by them. As the court noted in *Commonwealth* v. *Gallant,* 373 Mass. 577, 590 (1977), "[i]t is probable that the Legislature deemed fruitless any attempt to delineate the full variety of coercive sexual intrusions it wished to include in the overarching term 'unnatural sexual intercourse.'" Instead, G. L. c. 265, § 22 (*a*), punishes a variety of sexual assaults without regard to the gender of the victim, including

---

[5] The decisions relied upon by the defendant include *Commonwealth* v. *Gallant,* 373 Mass. 577 (1977) (fellatio: penetration of the victim's mouth with defendant's penis); *Commonwealth* v. *Whitehead,* 379 Mass. 640 (1980) (cunnilingus: female defendants upon female victim); *Commonwealth* v. *Cifizzari,* 397 Mass. 560 (1986) (unnatural sexual intercourse: insertion of inanimate object into victim's vagina); *Commonwealth* v. *Gonzales,* 5 Mass. App. Ct. 705 (1977) (anal intercourse: male defendant upon female victim); *Commonwealth* v. *Mamay,* 5 Mass. App. Ct. 708 (1977) (unnatural sexual intercourse: penetration of victim's vagina by defendant's finger); *Commonwealth* v. *Manning,* 6 Mass. App. Ct. 430 (1978) (fellatio: male defendant forced female victim to perform fellatio); *Commonwealth* v. *Brown,* 6 Mass. App. Ct. 854 (1978) (forced cunnilingus by male defendant upon female victim); *Commonwealth* v. *Mosby,* 11 Mass. App. Ct. 1 (1980) (cunnilingus: male defendant upon female victim).

"fellatio, cunnilingus, and other intrusions of a part of a person's body." *Id.* at 584. See also *Commonwealth* v. *Whitehead,* 379 Mass. 640 (1980); *Commonwealth* v. *Mosby,* 11 Mass. App. Ct. 1 (1980). By avoiding reference to penetration of the victim, or to the precise roles played by the parties to forced sexual acts, "the Legislature necessarily intended to treat modes of sexual connection other than common law rape as equally serious invasions of personal integrity." *Commonwealth* v. *Gallant, supra* at 584-585.

Thus, in Massachusetts, one who forces another to perform fellatio on him is guilty of rape, *Commonwealth* v. *Gallant, supra,* as is one who by force performs fellatio on another, see *Commonwealth* v. *Hackett,* 383 Mass. 888, 888 (1981). Under a gender-neutral statute, framed in the broad language of G. L. c. 265, § 22 (*a*), and designed to punish the outrage of compelled sex, a person who forces a victim to perform cunnilingus on someone should be guilty of rape. As stated in *Commonwealth* v. *Hackett, supra* at 888, "[n]owhere in [the] cases is it suggested that the person's body being entered must be the victim's . . . ." We hold, that, in a case in which the evidence warrants the jury in finding (as the evidence did in this case) that a female was forced to penetrate the vaginas of two other females with her tongue, such sexual acts constitute rape on the first female within the meaning of § 22 (*a*).

2. Three Boston police officers were allowed to give fresh complaint testimony concerning what the victim had told them about the sexual assaults. The only objections to the testimony by the defendants' trial counsel were that the complaints were made too long after any sexual assaults to be considered fresh and that the details given to one of the investigating officers included information about the beatings and torture inflicted upon the victim which were not strictly parts of the sexual assault for which the defendants were indicted.

There was evidence that the victim made contact with the police three days after the sexual assault. There was also evidence that she had been kept locked in a closet until the evening of January 19th, that she was not left alone thereafter, and that, after what she had been put through, she was extremely afraid of the defendants.

The trial judge acted well within his discretion in admitting the fresh complaint testimony as "reasonably prompt in light of the circumstances." *Commonwealth* v. *King,* 387 Mass. 464, 473 (1982). The judge need not make an explicit finding as to the admissibility of the testimony. The judge's comments here, when the testimony was admitted, indicate his implicit finding that the complaints were sufficiently prompt to be admissible under the fresh complaint doctrine. See *Commonwealth* v. *Crowe,* 21 Mass. App. Ct. 456, 480 (1986).

That the testimony of one police officer may have included some minor details that were not included in the victim's testimony is not fatal to its admission. See *Commonwealth* v. *Bailey,* 370 Mass. 388, 396 (1976). The jury were given brief but correct limiting instructions on the corroborative nature of the evidence when the first fresh complaint witness testified. They were also thoroughly instructed by the judge in his final instructions which included an admonition that the testimony was limited strictly to the sexual assault charges. Any possible error in one word in those instructions (which may have been a stenographic error)[6] did not effect the basic correctness of the judge's explanation of the law. The role of the testimony was adequately explained and its ultimate weight was properly left to the jury.

*Judgments affirmed.*

---

[6] The transcript indicates that the judge instructed the jury to take into account whether the victim's complaints were "reasonably made" in deciding whether they were fresh. We think it likely that he actually said "seasonably made."