THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DONALD SCOTT, Defendant-Appellant.

First District (1st Division)   Nos. 1—92—3386, 1—92—4077 cons.

Opinion filed November 14, 1994.—Rehearing denied April 5, 1995.

Rita A. Fry, Public Defender, of Chicago (Elyse Krug Miller, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Linda Woloshin, and Catherine F. Chaskin, Assistant State's Attorneys, of counsel), for the People.

JUSTICE O'CONNOR delivered the opinion of the court:

On May 30, 1991, defendant, Donald Scott, severely beat and robbed two women and forced the second woman to place her finger into her vagina. Scott now appeals from his subsequent convictions and sentences for attempted murder and aggravated criminal sexual assault. Scott was also convicted on two counts of robbery which he does not now challenge.

Edna Alexander had been, for 14 years, the manager at the Dixie Beauty Supply Store (Dixie) in Chicago Heights. She arrived for work on May 30, 1991, at about 10 a.m. In order to gain access to Dixie, customers had to knock on the door, and Edna, who ordinarily worked alone in the shop, would "buzz" them in.

At around 11 a.m., Scott arrived at the store, and Edna buzzed him in. He browsed in the store and told Edna he was looking for a "neutralizer" solution. Edna and Scott located the product, and Scott told Edna he would return to purchase it later in the day. As the two walked toward the front of the store, Scott turned and punched Edna in the face. Edna told Scott to rob the store, but not to hurt her. Scott then began beating Edna, who eventually lost consciousness.

R.G. was a friend of Edna and a long-time customer at Dixie. She went to Dixie on May 30, 1991, with $70 in cash. She arrived at the store shortly after 11 a.m. She knocked, but there was no answer. R.G. waited up to 20 minutes, knocking on the door, when Scott finally opened the store. He grabbed R.G. and dragged her into the store. He punched her in the face, and she flew out of her shoes, back three to four feet, her head smashing into a counter. When R.G. looked at Scott, he hit her again in the face, telling her not to look at him or he would kill her. R.G. asked about Edna, and Scott replied, "I took care of her."

Scott pushed R.G. farther into the store, where R.G. saw "Edna's body" on the floor, bloody, black and blue. Scott continued to drag R.G. into the store and hit her again when she looked at him. Scott demanded her money, and she gave him the $70.

Scott ordered R.G. to remove her clothes. When she did not, he reached under her dress and ripped her underwear off. Scott ordered R.G. to remove her tampon. Scott then lifted R.G.'s dress over her head and ordered her to place her finger into her vagina. After initially refusing, she did so. Scott stood behind R.G., who was lying on the floor. Scott spread R.G.'s legs with his feet. He began to unzip his pants and told R.G. he was going to rape her.

Meanwhile, Bayland Willis, who had witnessed R.G. being pulled into the store, watched through the window as Scott initially hit R.G. He called police. Officers Hank Vega and Mike Pauley of the Chicago Heights police department responded to the call between 11:15 and 11:30 a.m. They could not enter the front of the store because of the security system. Officer Vega ran to the back of the store.

According to R.G., Scott suddenly zipped up his pants and ran to the front of the store. R.G. heard someone yell "Police!" Scott hovered over Edna's body saying, "Shit, I'm busted!" He headed toward the rear entrance to the store and attempted to exit. He was met there

by Officer Vega, who placed him under arrest. When this occurred, R.G. got up and ran to the front of the store, out of the door and into the arms of Officer Pauley.

Medical testimony and photographic evidence revealed the extent of the injuries inflicted on Edna and R.G. R.G. suffered a broken nose, and her knees were scarred and swollen as a result of being dragged through the store. Edna was taken to the hospital, where her first memory occurred three days later, although she apparently had regained consciousness at least temporarily prior to that. Her eyes were swollen shut and her face was severely beaten and swollen. Blood covered her face and "oozed" from her eyes, ears, and lips. She remained in the hospital for 22 days. She suffered post-traumatic amnesia. The lacerations on her face required surgical repair. When she finally tried to walk 10 days later, she fell. She continued to have trouble with her balance, a condition called "ataxia," which the doctor offered resulted from severe head injuries. He stated, however, that Edna's injuries were not life-threatening. Edna was unable to walk without assistance for four months.

The jury found Scott guilty on two counts of robbery, one count for the aggravated criminal sexual assault of R.G., and one count for the attempted murder of Edna Alexander. Because of both the violent nature of the crimes and Scott's prior criminal record (including two prior criminal sexual assault convictions), the trial court sentenced Scott to consecutive terms of 50 years extended for aggravated criminal sexual assault, 30 years for attempted murder, and seven years each on the robbery counts.

■ Scott contends that his conviction for attempted murder cannot stand because the State did not proffer sufficient evidence that he maintained a specific intent to kill Edna Alexander, as required by section 8—4(a) of the Criminal Code. (Ill. Rev. Stat. 1991, ch. 38, par. 8—4(a). See *People v. Harris* (1978), 72 Ill. 2d 16, 377 N.E.2d 28.) When a defendant challenges the sufficiency of the evidence against him, this court must ascertain whether, after viewing the evidence in the light most favorable to the prosecution, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis omitted.) (*Jackson v. Virginia* (1979), 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789.) When considering a challenge to the State's proof of specific intent to kill, this court must look beyond the mere fact that serious bodily injury has been inflicted. (*People v. Jones* (1989), 184 Ill. App. 3d 412, 430, 541 N.E.2d 132.) Thus, evidence of intent to inflict great bodily harm is insufficient. (*Jones*, 184 Ill. App. 3d at 429.) Nonetheless, the State may establish specific intent to kill by inference from the circum-

stances surrounding the crime, such as the character of the assault or the use of a deadly weapon, or any additional matters from which an intent to kill may be inferred. *People v. Solis* (1991), 216 Ill. App. 3d 11, 576 N.E.2d 120.

■ In support of reversal, Scott relies on *People v. Garrett* (1991), 216 Ill. App. 3d 348, 576 N.E.2d 331, *People v. Jones* (1989), 184 Ill. App. 3d 412, 430, 541 N.E.2d 132, and *People v. Thomas* (1970), 127 Ill. App. 2d 444, 262 N.E.2d 495. In each of those cases, the defendant possessed a gun or a knife at the time of the crime but did not use it. The courts reasoned that because the defendant had both opportunity and means to kill, but did not, the State did not establish specific intent to kill. Scott contends that like the defendants in those cases, he had the means to kill Edna, but did not. The State responds that the cases are inapposite because Scott had a deadly weapon, his fists, *and* used it extensively. Therefore, the State contends, the cases cited by Scott are inapposite. The State argues that leaving Edna's severely beaten and bloody body lying in the store, combined with his statement to R.G. that he had "taken care of" Edna, shows his intent to kill, as well his belief that she was dead.

Scott counters with the doctor's testimony that none of Edna's injuries were life-threatening. However, we find this contention irrelevant because Scott would have had no way of knowing this at the time of the incident. Under Scott's theory of this case, the State could almost never obtain an attempted murder conviction where beating is the mode of infliction of harm. However, in addressing state of mind under the State's murder statutes, our supreme court has stressed that when a victim is killed by beating, rather than by "what in the ordinary sense is regarded as a deadly weapon *** death may be a natural consequence of a blow from a bare fist where there is a great disparity in size and strength between the defendant and the victim." *People v. Terrell* (1989), 132 Ill. 2d 178, 204, 547 N.E.2d 145, *cert. denied* (1990), 495 U.S. 959, 109 L. Ed. 2d 749, 110 S. Ct. 2567.

Indeed, most of our reported decisions on attempted murder involve the use of a "traditional" weapon, either knife or gun. For instance, when a gun is used, even if a defendant fires shots in the general direction of the victim, but those shots do not hit the victim, we permit an inference of intent to kill. (*E.g., People v. Jeter* (1993), 247 Ill. App. 3d 120, 616 N.E.2d 1256, *appeal denied* (1993), 152 Ill. 2d 570, 622 N.E.2d 1218.) This is because specific intent to kill may be inferred "from evidence that defendant voluntarily and willfully committed an act and that the natural tendency of such act was to destroy another's life." (*People v. Bailey* (1994), 265 Ill. App. 3d 262,

273, 638 N.E.2d 192, 199.) Use of a gun or knife always satisfies this standard. Use of one's hands does not.

Here, Edna did not testify that Scott tried to choke her or suffocate her. Rather, he methodically beat her. The State urges that Scott left Edna bleeding on the floor, passed out, where, at least as far as Scott was concerned, she may well have died. As noted above, the State also points to Scott's statement to R.G. that he "took care" of Edna, *i.e.*, that she was dead, as proof of his state of mind. We believe that given the extreme and extended beating inflicted upon Edna, coupled with Scott's size and strength, as demonstrated in the record, a rational jury could find an intent to kill under the circumstances. Scott's conviction for attempted murder is affirmed.

■ Scott also challenges the validity of his conviction for aggravated criminal sexual assault. Scott was charged pursuant to sections 12—13(a)(1) and 12—14(a)(3) of the Criminal Code of 1961 (Ill. Rev. Stat. 1991, ch. 38, pars. 12—13(a)(1), 12—14(a)(3)). Section 12—13(a)(1) requires an act of sexual "penetration," defined in section 12—12(f) as:

> "any contact, however slight, between the sex organ of one person and the sex organ, mouth or anus of another person, or any intrusion, however slight, of any part of the body of one person or of any animal or object into the sex organ or anus of another person, including but not limited to cunnilingus, fellatio or anal penetration." (Ill. Rev. Stat. 1991, ch. 38, par. 12—12(f).)

Scott contends that R.G.'s intrusion of her own finger into her vagina, though at his behest and following his forcible removal of R.G.'s undergarments, cannot constitute "penetration," because under section 12—12(f), the defendant must act upon the victim. The State responds, as it did at trial, that R.G.'s finger is an "object" and that the portion of section 12—12(f) referring to the intrusion of an object does not require that the defendant insert the object. Neither Scott nor the State has cited a case which addresses this issue.

Certainly, Scott is wrong in asserting that section 12—12(f) requires that the defendant actually conduct the intrusion. As the trial court noted, if a defendant holds a rifle to the victim's head and orders her to stick a broom handle into her vagina, both the "force or threat of force" and "penetration" elements of section 12—13(a)(1) of the Criminal Code (Ill. Rev. Stat. 1991, ch. 38, par. 12—13(a)(1)), which defines sexual assault, would be satisfied. Although Scott cites our supreme court's decision in *People v. Terrell* (1989), 132 Ill. 2d 178, 203-05, 547 N.E.2d 145, to bolster his argument, that decision does not stand for the proposition that the defendant, himself, must actually conduct the intrusion.

We must determine, therefore, whether the victim's finger is an "object" within the meaning of section 12—12(f). Convictions for sexual assault based on digital penetration are common, although they are generally based upon a charge of intrusion of a body part of one person into the sex organ of another. (*E.g., Terrell*, 132 Ill. 2d at 188 (defendant inserts finger and a Q-tip into baby's vagina).) Nonetheless, in *People v. Giles* (1994), 261 Ill. App. 3d 833, 848, 635 N.E.2d 969, 979, the court noted, "Furthermore, defendant was charged with penetrating A.T.'s vagina with an object (his finger) ***." We believe that the victim's finger is an object within the meaning of section 12—12(f). If Scott had grabbed R.G.'s hand and physically placed it in her vagina, we would not entertain any argument that intrusion had not occurred because her hand was not an object. The only difference between the hypothetical and the evidence here is the manner in which the assailant intruded the object upon the victim. Thus, we will not reverse this conviction because the "object" was the victim's finger rather than, say, a Q-tip.

Nonetheless, Scott contends that his conviction must be reversed because the trial court erroneously instructed the jury as to the definition of "penetration" and that it could find him guilty on an accountability theory. Despite our belief that the evidence presented was sufficient to permit a jury to convict Scott of numerous sex offenses, we are compelled to reverse his conviction because of serious errors in the jury instructions.

■ A defendant may be held legally accountable for the criminal acts of another when "[h]aving a mental state described by the statute defining the offense, he causes another to perform the conduct, and the other person in fact or by reason of legal incapacity lacks such a mental state." (Ill. Rev. Stat. 1991, ch. 38, par. 5—2(a).) The jury was instructed under this so-called "innocent agent" theory of accountability. Although, generally, the slightest evidence upon a theory of accountability warrants an instruction to the jury (*People v. Byrd* (1990), 206 Ill. App. 3d 996, 1007, 565 N.E.2d 176, *appeal denied* (1991), 137 Ill. 2d 667, 575 N.E.2d 150), we do not believe this to be such a case.

■ Scott is correct in asserting that had R.G. placed her finger into her vagina of her own volition, it would not be a crime. Indeed, the information upon which Scott was tried did not allege any criminal action by R.G., as is required when a defendant is tried under an accountability theory. (*People v. Doss* (1981), 99 Ill. App. 3d 1026, 1030, 426 N.E.2d 324.) The only reason the action here was criminal was because Scott forced R.G. to do the act. Absent Scott's direct action, there is no criminal act for which he could be held liable. This

is because under Illinois law, "penetration" requires the action of one person upon another. R.G.'s act could not have constituted "penetration," as defined, absent Scott's action in forcing her to do it. Thus, Scott's guilt could only be established by his own action. Concomitantly, he cannot be accountable for penetration unless he was an accessory to another person acting upon R.G. Under our criminal sexual assault statutes, when only the defendant and the victim are involved in a sexual assault, the defendant cannot be held liable under an accountability theory.

■ Nevertheless, an erroneously given accountability instruction is harmless beyond a reasonable doubt when the defendant "actually participated in the commission of the crime." (*Byrd*, 206 Ill. App. 3d at 1007.) Thus, we must address the additional instruction issue raised by Scott at oral argument, namely, that under the facts of this case, the jury could not have found that Scott committed an act of penetration pursuant to the instruction on this element given by the trial judge. We must agree.

The jury was instructed as follows:

> "The term 'Sexual Penetration' means any intrusion, however slight, *of any part of the body of one person into the sex organ of another person*, including but not limited to cunnilingus, fellatio, or anal penetration. Evidence of emission of semen is not required to prove sexual penetration." (Emphasis added.)

The information under which Scott was charged alleged that Scott forced R.G. to place her own finger into her vagina. The evidence established that allegation as correct. As we have held in this opinion, a finger is an object within the meaning of section 12—12(f) of the Criminal Code. The instruction offered to the jury on defining penetration had nothing to do either with penetration by object or with the manner accomplished by Scott. Thus, the jury could not have found Scott guilty on the record before us, and we are uncertain upon what theory the jury found guilt. The giving of this instruction, in conjunction with the erroneous accountability instruction, amounts to reversible error. Therefore, we reverse Scott's conviction for aggravated criminal sexual assault and vacate the sentence imposed by the trial court.

■ Scott has also alleged three errors in sentencing. Scott contends that (1) his sentence should be reduced because in sentencing him to 94 years' total imprisonment, the trial judge penalized him for exercising his right to a trial; (2) the trial court abused its discretion in imposing an extended-term, 50-year sentence under section 5—8—2 of the Unified Code of Corrections (Ill. Rev. Stat. 1991, ch. 38, par. 1005—8—2) for aggravated criminal sexual assault; and

(3) the trial court erred in imposing consecutive sentences. Given our disposition of Scott's conviction and sentence for aggravated criminal sexual assault, we believe that only Scott's challenge to the imposition of consecutive sentences remains ripe for review. We note that in sentencing Scott, the trial court found Scott eligible for consecutive sentencing under both sections 5—8—4(a) and 5—8—4(b) of the Unified Code of Corrections. (See Ill. Rev. Stat. 1991, ch. 38, pars. 1005—8—4(a), 1005—8—4(b).) Although our supreme court's decision in *People v. Bole* (1993), 155 Ill. 2d 188, 613 N.E.2d 740, renders erroneous the trial court's determination pursuant to section 5—8—4(a), the court's finding under section 5—8—4(b) that consecutive sentencing was required to "protect the public from further criminal conduct by the defendant" is amply supported by the record in this case, and thus any error was harmless.

Affirmed in part and reversed in part.

CAMPBELL, P.J., and BUCKLEY, J., concur.