NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

17-P-900                                          Appeals Court

COMMONWEALTH  vs.  REINALDO PRADO.

No. 17-P-900.

Middlesex.     May 4, 2018. - October 17, 2018.

Present:  Agnes, Neyman, & Sacks, JJ.

Rape.  Robbery.  Practice, Criminal, Assistance of counsel.
    Words, "Unnatural sexual intercourse."

Indictments found and returned in the Superior Court
Department on March 31, 2009.

Following review by this court, 86 Mass. App. Ct. 1103
(2014), a motion for a new trial, filed on August 8, 2016, was
heard by Kathe M. Tuttman, J.

Jeffrey G. Harris for the defendant.
Emily K. Walsh, Assistant District Attorney, for the
Commonwealth.

NEYMAN, J.  In this case, we are asked to determine whether
the act of forcing a person to penetrate her own genital opening
constitutes rape within the meaning of G. L. c. 265, § 22.  We
hold that it does, and thus affirm the order denying the
defendant's motion for new trial.

Background.  1.  Procedural history.  Following a jury trial in the Superior Court, the defendant, Reinaldo Prado, was convicted of one count of aggravated rape, see G. L. c. 265, § 22 (a), three counts of armed robbery, see G. L. c. 265, § 17, and three counts of witness intimidation, see G. L. c. 268, § 13B.  Represented by the same attorney he had at trial, the defendant appealed.  A panel of this court affirmed the judgments in a decision issued pursuant to our rule 1:28.  See Commonwealth v. Prado, 86 Mass. App. Ct. 1103 (2014).

More than two years later, the defendant, represented by new counsel, filed a motion for new trial, claiming that his trial counsel was ineffective for (a) failing to argue that G. L. c. 265, § 22, does not contemplate rape by compelled self-penetration; and (b) failing to challenge the sufficiency of the evidence of armed robbery where the Commonwealth proved only that the defendant used a BB gun and not a firearm as alleged in the indictment.  Following a hearing, the judge[1] issued a written memorandum of decision and order denying the motion for new trial.  The defendant now appeals therefrom.

2.  Facts from trial.  The charges against the defendant arose from two robberies and sexual attacks that occurred in Burlington and Tewksbury on January 24 and 25, 2009.  In both

---

[1] The motion judge also was the trial judge.

instances, the defendant responded to advertisements for adult services on the Internet Web site "Craigslist," arranged to meet the victims at a hotel, robbed them at gunpoint, and threatened to find or to kill them if they contacted the police.[2]  With respect to the January 24 incident, the defendant was convicted of aggravated rape for forcing the victim to put her fingers into her vagina.  Specifically, during the robbery he pulled out a black gun, backed the victim into a computer chair in the hotel room, touched her breast, and emptied the contents of her purse onto the bed.  After the victim grabbed her engagement ring from among those items, the defendant directed her at gunpoint to insert her fingers into her vagina.  The victim did so, against her will.[3]

---

[2] With respect to the January 25, 2009, attack, the defendant bound the victims' hands together with zip ties; stole from them $340 cash, two passports, two cellular telephones, bank cards, drivers' licenses, and two computers; ordered one victim to perform oral sex on the other; and warned them that he had their identification and would kill them if they contacted the police.  As to this incident, the jury convicted the defendant of armed robbery and intimidation of a witness, and acquitted him of aggravated rape and indecent assault and battery.

[3] The defendant was also charged with and prosecuted for another count of rape predicated on evidence that he forced his finger into the victim's vagina.  As reflected by the specific verdict slips, the jury acquitted the defendant on that count, but convicted him of rape for forcing the victim to penetrate her vagina with her own fingers.

The evidence at trial was corroborated through, among other things, (a) a surveillance video recording; (b) the defendant's statements to the police; (c) the retrieval of several items from the defendant and from his truck, including a BB gun, a box of commercial grade electrical zip ties consistent with those used to restrain two of the victims, a cellular telephone (cell phone) belonging to one of the victims, handwritten telephone numbers for other Craigslist advertisements offering adult services, and papers bearing the telephone number of one of the victims and the Burlington hotel address; and (d) the retrieval of another cell phone, laptop computers, laptop computer carrying cases, and passports, all belonging to the victims of the two incidents, located during a search of the defendant's apartment pursuant to a search warrant.

3. <u>Legal standards</u>. A motion for new trial may be granted only if it appears that justice may not have been done. Mass. R. Crim. P. 30 (b), as appearing in 435 Mass. 1501 (2001). Such motions are committed to the sound discretion of the judge, <u>Commonwealth</u> v. <u>Moore</u>, 408 Mass. 117, 125 (1990), and "are granted only in extraordinary circumstances," <u>Commonwealth</u> v. <u>Comita</u>, 441 Mass. 86, 93 (2004). "Reversal for abuse of discretion is particularly rare where the judge acting on the motion was also the trial judge." <u>Commonwealth</u> v. <u>Schand</u>, 420 Mass. 783, 787 (1995).

Where, as here, a motion for a new trial is based on ineffective assistance of counsel, the defendant must show that the behavior of counsel fell measurably below that of an ordinary, fallible lawyer and that such failing "likely deprived the defendant of an otherwise available, substantial ground of defence." Commonwealth v. Saferian, 366 Mass. 89, 96 (1974). See Commonwealth v. Millien, 474 Mass. 417, 432 (2016) (second prong of ineffective assistance test met if there is substantial risk of miscarriage of justice arising from counsel's failure).

Discussion. 1. Aggravated rape. The defendant claims that G. L. c. 265, § 22, does not criminalize compelled self-penetration. He contends that because there was no physical contact between the defendant and the victim, the evidence failed to satisfy the plain language of the statute requiring "unnatural sexual intercourse." He further argues that there is no Massachusetts precedent allowing a conviction of rape upon evidence of compelled self-penetration, that § 22 is ambiguous and thus must be construed against the Commonwealth under the rule of lenity, and that § 22 is unconstitutionally vague.

The Commonwealth responds that the defendant's arguments ignore established case law broadly interpreting nonconsensual unnatural sexual intercourse to include myriad sexual acts forced on unwilling victims. See Commonwealth v. Gallant, 373 Mass. 577, 590 (1977). We conclude that Massachusetts law

establishes that unnatural sexual intercourse is broad enough to include compelled penetration of a victim's genital opening.

Our analysis begins with the plain language of the statute and, in particular, the words "unnatural sexual intercourse." "We interpret statutory language to give 'effect consistent with its plain meaning and in light of the aim of the Legislature' unless to do so would achieve an 'absurd' or 'illogical' result." Commonwealth v. Scott, 464 Mass. 355, 358 (2013), quoting Sullivan v. Brookline, 435 Mass. 353, 360 (2001). "Words and phrases shall be construed according to the common and approved usage of the language." Scott, supra, quoting Opinion of the Justices, 313 Mass. 779, 781-782 (1943). "However, the construction of a word or phrase may vary from its plain meaning when such a meaning would 'involve a construction inconsistent with the manifest intent of the law-making body or repugnant to the context of the same statute'" (citation omitted). Scott, supra.

Prior to 1974, G. L. c. 265, § 22, provided: "Whoever ravishes and carnally knows a female by force and against her will shall be punished." By St. 1974, c. 474, § 1 (1974 amendment), entitled "An Act redefining the elements constituting the crime of rape and related offenses," the Legislature amended § 22. The new language provided, in relevant part, "Whoever has . . . unnatural sexual intercourse

with a person, and compels such person to submit by force and against his will," shall be guilty of rape.[4]

In Gallant, 373 Mass. at 583-584, the Supreme Judicial Court analyzed the meaning and the impact of the 1974 amendment, and held that it extended the protections of the Massachusetts rape statutes. The 1974 amendment effected a significant change in the law beyond abolishing artificial distinctions based on gender and replacing the archaic terminology of "ravishing" and "carnal knowledge" with the more contemporary "sexual intercourse." Id. at 584. Indeed, the 1974 amendment "necessarily rework[ed] the common law definition of rape," and "must be viewed as part of a comprehensive attempt to redefine the legal elements of rape." Id. at 583, 584. Under the amended law, "the definition of 'unnatural sexual intercourse' must be taken to include oral and anal intercourse, including fellatio, cunnilingus, and other intrusions of a part of a person's body or other object into the genital or anal opening of another person's body." Id. at 584. Moreover, the court

---

[4] By St. 1980, c. 459, § 6, entitled "An Act providing graduated penalties and victim compensation for the crime of rape and related offenses," the Legislature further amended G. L. c. 265, § 22. Among other things, this amendment created subsections "(a)" (delineating elements and punishment for aggravated rape) and "(b)" (delineating elements and punishment for nonaggravated rape), provided that rape committed "during the commission" of armed robbery or other enumerated crimes constituted aggravated rape, and provided enhanced penalties for rape committed with aggravating circumstances.

specified that the scope of the term "unnatural sexual intercourse" is "broad," and that "the Legislature necessarily intended to treat modes of sexual connection other than common law rape as equally serious invasions of personal integrity." Id. at 584-585, 590.  Consistent with the tenets of Gallant, subsequent case law recognized various modes and means of rape. See, e.g., Commonwealth v. Nuby, 32 Mass. App. Ct. 360, 362 (1992); Commonwealth v. Guy, 24 Mass. App. Ct. 783, 786-787 (1987).

We turn to the conduct at issue in the present case.  The defendant, while brandishing a gun during an armed robbery, forced the victim, against her will, to penetrate her vagina with her fingers.  We conclude that such conduct constitutes a "mode[] of sexual connection" that embodies an "equally serious invasion[] of personal integrity" as common-law rape.  Gallant, supra at 585.  As the judge noted in her order denying the motion for new trial, the "gravamen of the [rape] charge, as set forth in the statute, is sexual penetration by force and against the [victim's] will or by threat of bodily injury."  See Commonwealth v. Lopez, 433 Mass. 722, 726-727 (2001) ("Sexual intercourse is defined as penetration of the victim, regardless of degree"); Commonwealth v. Sherry, 386 Mass. 682, 687 (1982) ("The essence of the crime of rape, whether aggravated or unaggravated, is sexual intercourse with another compelled by

force and against the victim's will or compelled by threat of bodily injury").  That is what occurred here.

The defendant counters that the definition of unnatural sexual intercourse does not include the conduct at issue here, because "[t]here was no physical contact."  We disagree.  First, there was physical contact here -- offensive, intrusive, and forced physical contact -- in the form of the victim's fingers inserted into her vagina by command of the armed defendant, backed by the threat of deadly force.

Second, to the extent that the defendant contends that there was no physical contact "by the defendant," the argument is still unavailing.  Pursuant to G. L. c. 265, § 22 (a), "there is no requirement that the sexual contact involve penetration of the victim by the perpetrator."  Guy, 24 Mass. App. Ct. at 786.  Rather, our precedent recognizes the myriad ways by which rape is perpetrated, even without physical contact by the defendant.  See, e.g., Nuby, 32 Mass. App. Ct. at 362 (defendant guilty of forcible rape of child for compelling girl friend's son to penetrate her vagina with his tongue and fingers); Guy, supra at 784-787 (defendants guilty of rape for forcing victim to perform cunnilingus on two consenting females).  See also State v. Thomas, 619 S.W.2d 513, 513 (Tenn. 1981) (defendant guilty of rape where he forced victim at gunpoint to perform oral sex on her husband).  The common thread in these cases is some form of

forced penetration compelled by the defendant, and not a literal touching by the defendant. Cf. Commonwealth v. Davidson, 68 Mass. App. Ct. 72, 74 (2007) ("our cases do not require that the defendant himself perform the touching" to be convicted of indecent assault and battery).

Third, and finally, we disagree with the defendant's argument that there was no physical contact within the meaning of Gallant because there was no "intrusion[] of a part of a person's body or other object into the genital or anal opening of another person's body." Gallant, 373 Mass. at 584.[5] The facts of this case epitomize what § 22 (a) prohibits: an intrusion into another's (i.e., the victim's) genital opening, by an object -- the victim's own fingers -- committed through the force of the defendant. See Lopez, 433 Mass. at 726-727 ("Sexual intercourse is defined as penetration of the victim, regardless of degree"); Commonwealth v. Cifizzari, 397 Mass. 560, 562, 576-577 (1986) (defendant's use of mop handle to penetrate victim constitutes rape within meaning of statute). See also People v. Scott, 271 Ill. App. 3d 307, 313 (1994) (victim's finger is object within meaning of Illinois aggravated

---

[5] Consistent with the language in Gallant, the judge here instructed the jury, in relevant part, that "[u]nnatural sexual intercourse includes oral and anal intercourse including [fellatio] and cunnilingus and other intrusions of a part of a person's body or other object into the genital or anal opening of another's body."

criminal sexual assault statute); Kirby v. State, 625 So. 2d 51, 55 (Fla. Dist. Ct. App. 1993) (where defendant forced victim to insert her fingers into her vagina, court held that finger is "object" within context of Florida sexual battery statute). That the defendant here chose to penetrate the victim with her fingers does not render the act a lesser crime. To the contrary, Gallant instructs that in view of the innumerable ways in which rape may be perpetrated, courts should not create artificial limits on the meaning of unnatural sexual intercourse. See id. at 590 ("[i]t is probable that the Legislature deemed fruitless any attempt to delineate the full variety of coercive sexual intrusions it wished to include in the overarching term 'unnatural sexual intercourse'"). See also Scott, supra ("If [the defendant] had grabbed [the victim's] hand and physically placed it in her vagina, we would not entertain any argument that intrusion had not occurred because her hand was not an object. The only difference between the hypothetical and the evidence here is the manner in which the assailant intruded the object upon the victim"). We decline to do so here, where "[i]t is difficult to imagine conduct more violative of social and behavioral expectations, or more disruptive of psychic integrity." Gallant, supra at 589-590. See Commonwealth v. Chretien, 383 Mass. 123, 131 (1981), quoting Hayon v. Coca Cola Bottling Co., 375 Mass. 644, 648-649 (1978)

(construction of statute "should advance rather than defeat the purpose of the statute").

We likewise reject the defendant's arguments that G. L. c. 265, § 22 (a), is unconstitutionally vague, and that the rule of lenity mandates a different result. The defendant had sufficient notice that his actions constituted criminal felonious conduct as delineated in Gallant, 373 Mass. at 584-587 (articulating meaning of unnatural sexual intercourse and rejecting claim that child rape statute is unconstitutionally vague). See Robinson v. Berman, 594 F.2d 1, 2 (1st Cir. 1979) ("A statute whose terms have a commonly understood meaning or have been clarified by judicial explanation or by application to particular conduct is not unconstitutionally vague"). Furthermore, the defendant was on notice that the act of compelling a person to "play with herself" constitutes indecent assault and battery. Commonwealth v. Portonova, 69 Mass. App. Ct. 905, 905 (2007). The rulings in Gallant, 373 Mass. at 584-587, and Portonova, supra at 905-906, negate the defendant's claim that the rape statute is unconstitutionally vague. "The essence of the fair warning requirement embodied in the due process clause is that a person should not be punished for an act he could not know was criminal." Robinson, supra at 3. A person who commits an act while on notice that it violates one statute "ha[s] no cause to complain that he had no notice his

conduct violated another statute," even where the maximum penalty under that other statute is more severe.  Id., citing Gallant, supra at 586.  Although the maximum penalty for rape exceeds that for indecent assault and battery, see G. L. c. 265, §§ 13H, 22, "an argument premised on the unconstitutionality of a statute for vagueness does not address the issue of differing potential punishments.  Unless prosecutorial abuse of discretion in charging [a defendant] under the harsher statute is alleged . . . we see no due process violation."  Robinson, supra.  See Gallant, supra at 586 n.11.

Moreover, the defendant was also on notice that the distinction between the crimes of rape and indecent assault and battery is the element of penetration.  See Commonwealth v. Donlan, 436 Mass. 329, 335-336 (2002) ("Indecent assault and battery is a lesser included offense of rape of a child by force. . . .  The difference between the two offenses is the element of penetration"); Commonwealth v. Walker, 426 Mass. 301, 304 (1997) (elements of rape and indecent assault and battery are same "except for the aggravating factor of penetration in the rape charge that distinguishes the greater offense from the lesser offense").  Where the evidence in the present case involved the additional element of penetration, and where the defendant was on notice of the rulings in Gallant and Portonova, supra, he had sufficient notice that his conduct constituted

rape and derives no benefit from the rule of lenity. See Commonwealth v. Nylander, 26 Mass. App. Ct. 784, 787 (1989) (evidence of penetration necessary to prove acts of rape "in order to differentiate those acts from other prohibited sexual touchings"). In addition, a holding that an indecent assault and battery, aggravated by penetration, constitutes the same offense as a forced touching without penetration would create an illogical and absurd result. See Scott, 464 Mass. at 358. Accordingly, the statute and Massachusetts common law provide the defendant clear warning as to proscribed activities. See Commonwealth v. Poillucci, 46 Mass. App. Ct. 300, 305 (1999) ("Given that the defendant's conduct fell squarely within the statute, counsel lacked a cogent argument that the statute was unconstitutionally vague as applied to the defendant").

In sum, the defendant's act of forcibly penetrating the victim's vagina with her own fingers fell within the scope of unnatural sexual intercourse under G. L. c. 265, § 22. It follows, therefore, that counsel was not ineffective. See Saferian, 366 Mass. at 96. Accordingly, the judge correctly denied the motion for new trial on this basis.[6]

---

[6] The defendant cites to cases in other jurisdictions holding that compelled self-penetration does not constitute rape. See, e.g., State v. Bryant, 670 A.2d 776, 779 (R.I. 1996). That notwithstanding, we adhere to Massachusetts case law interpreting the language of our rape statutes which, as discussed, compels a different result.

2.  Armed robbery indictment.  Citing Commonwealth v. Garrett, 473 Mass. 257 (2015), the defendant also contends that his trial counsel was ineffective for not challenging the purported discrepancy between the armed robbery indictment and the evidence, which proved only that he used a BB gun and not a "dangerous weapon, to wit:  firearm" as alleged in the indictment.  The argument is unavailing.

In Garrett, the defendant was indicted and convicted of masked armed robbery by means of a firearm.  Id. at 257-258.  The defendant was not charged with armed robbery by means of a dangerous weapon.  Id. at 258 n.1.  Rather, the relevant indictments alleged, among other things, that the defendant, armed "with a handgun," committed armed robbery while masked (emphasis supplied).  Id. at 264.  The evidence at trial, however, showed that the defendant used a BB gun.  Id. at 258.  The Supreme Judicial Court vacated the judgment because the court determined that a BB gun is not a firearm for the purpose of the armed robbery statute and, thus, the evidence in support of the indictment was insufficient.  Id. at 263-264.  The case was remanded for entry of a verdict of guilty on the lesser included offense of unarmed robbery.  See id. at 267.  The court noted that "[t]he defendant was not indicted for, and thus cannot be convicted of, armed robbery with a dangerous weapon."  Id. at 267 n.12.

In the present case, by contrast, the evidence was sufficient to support the crime as charged in the indictment. The armed robbery indictment alleged, among other things, that the defendant, "armed with a dangerous weapon, to wit:  firearm did assault [the victim] with intent to rob her, and thereby did rob . . ." (emphasis supplied).  The Commonwealth's evidence amply demonstrated that the defendant was armed with a dangerous weapon as that term has been defined in our case law.  See Commonwealth v. Powell, 433 Mass. 399, 402 (2001) (replica or fake weapon is dangerous weapon "if the victim would, in all the surrounding circumstances, reasonably believe that the object was a real weapon").[7]  By drawing the indictment to allege the crime of armed robbery "with a dangerous weapon," rather than "with a handgun," the Commonwealth here avoided the concerns delineated in Garrett, 473 Mass. at 268 (Gants, C.J., concurring) ("Had the Commonwealth drawn its indictment to allege the crime of armed robbery with a dangerous weapon, the defendant would properly have been found guilty of armed robbery

---

[7] Consistent with the holding in Powell, supra at 404, the judge in the present case instructed, in relevant part, "A person who uses a toy gun or other fake weapon to commit a robbery may be convicted of armed robbery if the victim reasonably took it to be a real weapon capable of inflicting bodily injury.  The law of armed robbery does not require the Commonwealth to show that the instrument was actually used.  It is sufficient if the Commonwealth proves beyond a reasonable doubt that the defendant was actually armed with a dangerous weapon."

because the BB gun in this case was a dangerous weapon, which under our case law includes a weapon that appears to be a firearm, even if not actually a firearm"). Where, as here, "it reasonably appeared, in all the circumstances, that the object in the defendant's possession was capable of inflicting serious bodily injury or death, the jury could conclude that that object was a dangerous weapon and that the robbery was therefore an armed robbery."[8] Powell, supra at 404.

The defendant maintains that the problem raised in Garrett nonetheless persists here because the indictment specified the dangerous weapon as, "to wit: firearm." We disagree. The "to wit" language in the indictment constituted a nonfatal variance under our precedent. See Commonwealth v. Harris, 9 Mass. App. Ct. 708, 710-711 (1980) (judgment predicated on armed robbery with gun affirmed where Commonwealth tried case on basis of victim's testimony that underlying robbery was committed with gun, even though indictment specified that defendant was "armed with a dangerous weapon, to wit, a knife"). The defendant's argument ignores that he was convicted of the charges as submitted to the jury. The jury instruction correctly specified that the Commonwealth was required to prove that the defendant

---

[8] Of course, a BB gun may qualify as a dangerous weapon in its own right, without regard to its resemblance to some other form of weapon. Compare Powell, supra at 404.

"was armed with a dangerous weapon," and did not specify that the weapon must be a firearm.[9]  Thus, in the context of this case, the "to wit" language was superfluous.  See <u>Commonwealth</u> v. <u>Grasso</u>, 375 Mass. 138, 139 (1978) ("a defendant is not to be acquitted on the ground of variance between the allegations and proof if the essential elements of the crime are correctly stated, unless he is thereby prejudiced in his defense"); <u>Commonwealth</u> v. <u>A Juvenile</u>, 365 Mass. 421, 440 (1974) (language in indictment or complaint specifying means of death is superfluous and, thus, "defendant is not entitled to an acquittal by reason of the Commonwealth's failure to prove unnecessary allegations in the description of a crime"); <u>Commonwealth</u> v. <u>Salone</u>, 26 Mass. App. Ct. 926, 930 (1988) ("The language in the indictment specifying the particular weapon used is superfluous").  Finally, "[t]he particular type of weapon with which the armed robbery was committed was not an essential element of the crime" of armed robbery.  <u>Harris</u>, <u>supra</u> at 712.  Accordingly, the defendant has failed to demonstrate ineffective assistance of counsel and, thus, the judge correctly denied the motion for new trial on this basis.

<u>Order denying motion for</u>
<u>new trial affirmed</u>.

---

[9] The defendant did not object to the judge's comprehensive instructions regarding the dangerous weapon element of armed robbery.