## COMMONWEALTH vs. WILLIAM E. JANSEN.

Berkshire. December 6, 2010. - March 2, 2011.

Present: IRELAND, COWIN, CORDY, BOTSFORD, & GANTS, JJ.

*Rape. Joint Enterprise. Practice, Criminal,* Double jeopardy, Required finding, Lesser included offense. *Evidence,* Joint venturer. *Deoxyribonucleic Acid. Consent.*

A Superior Court judge correctly allowed a criminal defendant's motion to dismiss indictments charging aggravated rape on a theory of joint venture, where, as to an indictment premised on the defendant's individual liability for engaging in sexual intercourse with the victim, there was no evidence at trial that the defendant did so in a united act with either or both of the codefendants [27-28]; and where, as to indictments premised on the defendant's culpability for having operated a video camera that recorded sexual acts between the codefendants and the victim, there was no evidence at trial that the defendant operated the camera, or that permitted the jury to infer that the defendant knew the camera was being operated or was involved in its operation [28].

A Superior Court judge properly denied a criminal defendant's motion to dismiss so much of an indictment as charged rape, where there was sufficient evidence from which the jury reasonably could have inferred that the defendant had penile-vaginal sexual intercourse with the victim, and that the victim lacked the capacity to consent to sexual intercourse with the defendant. [29-31]

INDICTMENTS found and returned in the Superior Court Department on October 17, 2005.

The cases were tried before *John A. Agostini*, J., and a motion to dismiss was heard by him.

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on December 31, 2007.

The case was considered by *Cordy*, J.; the case was transferred by him to the Appeals Court and consolidated with the pending appeal.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*David P. Hoose* for the defendant.

*Joseph A. Pieropan*, Assistant District Attorney, for the Commonwealth.

IRELAND, J. A Berkshire County grand jury returned three indictments against the defendant, William E. Jansen, for aggravated rape, in violation of G. L. c. 265, § 22 (*a*).[1] The Commonwealth's theory was that the rape was "aggravated" because it was committed by reason of a "joint enterprise," see *id.*, involving the defendant, Aaron Kincaid, and Richard Lampron,[2] who acted collectively through a joint venture. The first indictment effectively charged the defendant, as a joint venturer, with aggravated rape for the penile-vaginal sexual intercourse he committed against the complainant, whom we call Gail.[3] The second and third indictments charged the defendant, as a joint venturer, with aggravated rape for the sexual acts committed by

---

[1] Pursuant to G. L. c. 265, § 22 (*a*), aggravated rape is defined, in pertinent part, as:

"Whoever has sexual intercourse or unnatural sexual intercourse with a person, and compels such person to submit by force and against his will, or compels such person to submit by threat of bodily injury and if either such sexual intercourse . . . is committed by a joint enterprise . . . shall be punished by imprisonment in the state prison for life or for any term of years."

The "essence of the crime of rape, whether aggravated or unaggravated, is sexual intercourse with another compelled by force and against the victim's will [without consent]." *Commonwealth* v. *McCourt*, 438 Mass. 486, 494-495 (2003), quoting *Commonwealth* v. *Guisti*, 434 Mass. 245, 248 (2001). See *Commonwealth* v. *Blache*, 450 Mass. 583, 589 (2008) (in cases where complainant lacks capacity to consent to sexual intercourse only force required is that necessary to effect penetration); *Commonwealth* v. *Caracciola*, 409 Mass. 648, 652 (1991) (although rape is crime of violence, force used to accomplish rape need not be physical force). By providing for the presence of certain aggravating factors, such as a rape committed by reason of a joint enterprise, the Legislature has ensured that certain rapists will face a "heightened penalty." *Commonwealth* v. *McCourt, supra* at 493, 496.

[2] The defendant, William E. Jansen, was tried with Aaron Kincaid (Kincaid). The trial commenced in November, 2006. Prior to the trial, Richard Lampron (Lampron) pleaded guilty to two charges of aggravated rape. This appeal pertains solely to the charges against the defendant.

[3] We use the same pseudonym for the complainant as was used in related cases. See *Commonwealth* v. *Kincaid*, 444 Mass. 381, 382 (2005); *Jansen, petitioner*, 444 Mass. 112, 113 & n.4 (2005), abrogated by *Commonwealth* v. *Dwyer*, 448 Mass. 122, 140 n.22 (2006) (abrogated with respect to procedure required to obtain pretrial access to records of third party). See G. L. c. 265, § 24C (mandating victim's name in rape case be kept confidential).

Kincaid and Lampron, respectively, against Gail (specifically, the penile-vaginal sexual intercourse by Kincaid and the insertion of a hair tie by Lampron into Gail's vagina), which the defendant allegedly videotaped. At the trial of these indictments, a Superior Court jury were unable to reach unanimous verdicts, and the judge declared a mistrial. Thereafter, the defendant moved to dismiss the indictments on the ground that the evidence presented at trial was legally insufficient[4] and, therefore, retrial was barred on double jeopardy principles. See *Corson* v. *Commonwealth*, 428 Mass. 193, 196 (1998), and cases cited. Concerning the first indictment, the trial judge granted the motion as it pertained to aggravated rape, but denied the motion insofar as it charged the lesser included offense of rape. The judge granted the motion as to the second and third indictments.

The Commonwealth appealed to the Appeals Court from the dismissal of the second and third indictments and the partial dismissal of the first indictment. The defendant filed a petition pursuant to G. L. c. 211, § 3, in the county court seeking relief from the judge's order denying his motion to dismiss the first indictment insofar as it charged rape. See *Neverson* v. *Commonwealth*, 406 Mass. 174, 175-176 (1989), and cases cited. A single justice transferred the petition to the Appeals Court, see G. L. c. 211, § 4A; *Fadden* v. *Commonwealth*, 376 Mass. 604, 608 (1978), cert. denied, 440 U.S. 961 (1979), and ordered that it be consolidated with the Commonwealth's pending appeal. In an unpublished memorandum and order issued pursuant to its rule 1:28, the Appeals Court concluded that there was sufficient evidence to permit Jansen's retrial on all the indictments against him. *Commonwealth* v. *Jansen*, 76 Mass. App. Ct. 1101 (2009). We granted the defendant's application for further appellate review. Because there was insufficient evidence of a "joint enterprise," we conclude that the Superior Court judge correctly allowed the defendant's motion to dismiss as to the second and third indictments as well as to so much of the first indictment as alleged aggravated rape. We also conclude that because there was sufficient evidence of rape, the judge properly denied the defendant's motion to dismiss that portion of the first indictment

---

[4]At the close of the Commonwealth's case, the defendants had moved for required findings of not guilty, which motions were denied.

alleging rape. We therefore affirm the Superior Court judge's order.

1. *Facts.* We set forth the facts in the light most favorable to the Commonwealth. *Commonwealth* v. *Latimore*, 378 Mass. 671, 677-678 (1979). On the evening of Wednesday, September 23, 1998, Gail consumed one or two beers after finishing her "shift," at around 9 or 10 P.M., at the restaurant where she worked in Lenox. She drove to a bar in Pittsfield, La Cocina's Pub (La Cocina's), ordered one beer, and had a conversation with a man she knew, Robert Dwyer (Dwyer).[5] At some point, Kincaid, Lampron, and the defendant entered the bar[6] and sat at a table together. Gail had once lived with Lampron, and had been involved in a tumultuous, romantic relationship with him for about one and one-half years. Gail also knew the defendant, who was a friend of Lampron.[7] Kincaid approached Gail, and Gail left Dwyer and joined Kincaid at the bar, where they spoke privately for about twenty to thirty minutes. Afterward, Gail and Kincaid went over to the table where Lampron and the defendant were sitting. Gail had difficulty walking over to the table. Her legs were "giving out," and she was walking as if she were "drunk." The men, Kincaid, Lampron, and the defendant, together with Gail, then left the bar. They all got into an automobile and sped off to a house shared by the three men in Lee (the defendant's house).

Gail had no memory of leaving the bar or going to the defendant's house. She recalled waking up in Kincaid's bed when it was dark and, although she had some awareness, she was confused and was not able physically to move or to resist. She did not feel intoxicated. She remembered Kincaid and Lampron being present in the room and each having sexual intercourse (penile-vaginal) with her.

Gail regained consciousness at some point the next day when it was light outside. She still was unable physically to move or

[5]Robert Dwyer (Dwyer) testified that, at this time, Gail "seemed fine" to him and did not appear to be under the influence of alcohol.

[6]Dwyer saw Kincaid and Lampron enter the bar together. They came in with a "group," but Dwyer did not know the names of the other individuals in the group.

[7]During the summer of 1998, Gail had consensual sexual intercourse with the defendant.

to resist. Kincaid and Lampron took turns having sexual intercourse (penile-vaginal) with her again.

Gail had no recollection of the defendant's presence in Kincaid's room during the rapes. Nor did she have any memory of the defendant engaging in any sexual act with her that night or morning. Gail did recall that the defendant drove her back to La Cocina's where her automobile was parked. She remembered Kincaid telling her, as she was leaving the house with the defendant, that she "should check herself." When she arrived at her automobile at La Cocina's, Gail realized that she left some personal items at the defendant's house, so she followed him back in her automobile to retrieve those items. Gail had no memory of the drive back or what occurred when she went back into the house.

Later that day, after going home and sleeping for some time, Gail went to the bathroom and found a hair tie[8] inside her vagina. She removed and discarded it in the trash. At some point, she realized that some prescription medication that had been in her purse was no longer there.[9]

On Friday, September 25, 1998, Gail spoke with police. After doing so, she went home, retrieved the hair-tie, and placed it in a plastic bag.

During the investigation, the defendant admitted to a State trooper that he, Kincaid, and Lampron had gone to La Cocina's and that Gail went home with them.[10] He stated that once he arrived home, he went to his second-floor bedroom and went to bed. The defendant also stated that he had not been involved in any videotaping at the house. The defendant recalled driving Gail back to the parking lot of La Cocina's the following morning.

Deoxyribonucleic acid (DNA) testing revealed that Kincaid's DNA profile "matche[d]" the primary DNA profile of the sperm fraction extracted from the hair tie and plastic bag sample,[11]

---

[8]Gail called the object a "barrette," and described it as a "child's ponytail holder." We refer to the object as a hair tie.

[9]The medication was Vicodin, a pain reducer, and Soma, a muscle relaxer. Gail testified that she had not taken any of this medication on September 23, 1998, before going to the bar or while at the bar.

[10]The defendant's statements concerning what he told a State trooper during the investigation came out during his grand jury testimony, which the trooper read to the jury at the defendant's trial.

[11]One deoxyribonucleic acid (DNA) sample was generated by "swabbing"

which had been turned over to police in February, 1999.[12] Further DNA testing on the hair tie and plastic bag sample could not exclude the defendant as being a possible secondary contributor of the sperm fraction extracted from the sample.[13]

There was evidence that at least part of the incident had been recorded on videotape. Two witnesses testified at trial that, sometime in September, 1998, Kincaid showed them portions of a videotape[14] depicting Kincaid having sexual intercourse with Gail. The recording was made from the vantage point of a heating vent in the defendant's bedroom floor.[15] Gail was lying on her back, nude below the waist, immobile, and had hardly any facial expression. Kincaid wore a mask and looked up at the camera occasionally, but Gail did not. Kincaid ejaculated on Gail, put his penis in her mouth, gave a "thumbs up" to the camera above, and left the room. After Kincaid left the room, Lampron came into view wearing a mask. Lampron took an object (around which the hair tie was placed) and forced it into Gail's vagina. Gail was not responsive. Lampron looked up to the camera, laughed, and left. One witness heard laughter coming from a source that was not visible on camera. These parts of the videotape were filmed during daylight hours. In addition, other witnesses testified that Kincaid had bragged that he and Lampron had sex with Gail while she was "unconscious" and "on a muscle relaxer,"[16] a video camera was involved, and a "barrette" was used that ended up "lodged" in Gail's vagina.

both the hair tie and the plastic bag in which the hair tie was kept. From this sample, analysts were able to develop a DNA profile that came from sperm (sperm fraction) as opposed to DNA that did not come from sperm (nonsperm fraction). There was expert testimony explaining that a special extraction technique separates sperm cell DNA from nonsperm cell DNA.

[12]There was expert evidence that DNA may exist for a long time, in some cases years, before it degrades and becomes unusable. In addition, if DNA is stored in a cooler and dry condition, it will be "preserved better" than if stored in a moist and damp environment.

[13]The probability of another randomly selected Caucasion individual having the same DNA profile as the defendant is one in 590,000.

[14]The videotape was not entered in evidence, but there was testimony concerning some of its content.

[15]Kincaid's bedroom was just under the defendant's. Through a heating vent in the defendant's bedroom floor, one could see into Kincaid's bedroom.

[16]One witness recalled Kincaid identifying the muscle relaxer as the drug Soma. See note 9, supra.

2. *Discussion.* Where, as here, the defendant has moved for a required finding of not guilty, and a deadlocked jury resulted in a mistrial, common-law principles of double jeopardy do not bar retrial, provided the Commonwealth "presented evidence legally sufficient to support a conviction at the first trial." *Corson* v. *Commonwealth*, 428 Mass. 193, 196 (1998). The question for the appellate court in these circumstances is the same as the question before the trial judge on the motion for a required finding of not guilty and, following mistrial, on the defendant's motion to dismiss: whether the evidence produced by the Commonwealth in its case-in-chief was sufficient to convict on the crimes charged.[17] The evidence may be primarily or entirely circumstantial, provided that, when viewed in the light most favorable to the Commonwealth, it "and the inferences permitted to be drawn therefrom [are] 'of sufficient force to bring minds of ordinary intelligence and sagacity to the persuasion of [guilt] beyond a reasonable doubt.' " *Commonwealth* v. *Latimore*, 378 Mass. 671, 677 (1979), quoting *Commonwealth* v. *Cooper*, 264 Mass. 368, 373 (1928).

a. *Aggravated rape.* In *Commonwealth* v. *Medeiros*, 456 Mass. 52, 60 n.10 (2010), we noted that the "[c]ommission of rape by 'joint enterprise' where the 'joint enterprise' is an element of the crime is *distinct* from general liability as a joint venturer" (emphasis added). We stated that "aggravated rape by reason of joint enterprise is a crime that requires 'the united act of two or more individuals to constitute an offence in either.' " *Id.* at 60, quoting *Commonwealth* v. *Slate*, 11 Gray 60, 63 (1858). Here, irrespective of the *manner* in attaching individual liability, see *Commonwealth* v. *Medeiros, supra*, there was insufficient evidence that the sexual acts underlying all three indictments amounted to a "united act" involving the defendant with another.

With respect to the first indictment, there was no evidence that the defendant engaged in sexual intercourse with Gail, either on or off the videotape, in a "united act" with Kincaid, Lampron, or both. There was no evidence that any sexual act committed by the defendant was done in the presence of or with the knowledge of Kincaid or Lampron, or that Kincaid or Lampron were willing

---

[17]In this case, we consider only the state of the evidence at the close of the Commonwealth's case. There is no contention that the Commonwealth's evidence deteriorated during the defendant's presentation of evidence.

and available to assist the defendant at the time of any sexual intercourse between him (the defendant) and Gail. The evidence, therefore, was not legally sufficient to establish that the defendant acted as part of a joint enterprise with respect to the first indictment, and thus, the *aggravated* rape aspect of the first indictment cannot stand.

The evidence was also insufficient to demonstrate, with respect to the second and third indictments, that the Commonwealth met its burden in its case-in-chief of establishing that the defendant engaged in a "united act" with Kincaid or Lampron, or both. The Commonwealth's theory as to these indictments was that the defendant's culpability arose from his operation of the video camera when Kincaid and Lampron engaged in sexual acts, respectively, with Gail. Even if an inference reasonably could be drawn that *someone* was manually operating the video camera,[18] there was no evidence that the defendant, as opposed to Kincaid or Lampron, was the operator.[19] Although there was evidence that the heating vent where the video camera was located was accessible from the defendant's room, it also was accessible from Kincaid's room. Further, while there was evidence that may have permitted an inference that the defendant was present in the house while the camera was being operated, there was no evidence from which the jury could infer that the defendant knew that it then was being operated or that he was involved in its operation. While the Commonwealth may satisfy its burden of proof through the use of circumstantial evidence, "a jury may not use conjecture or guesswork to choose between alternative inferences." *Commonwealth* v. *Dostie*, 425 Mass. 372, 376 (1997). Because the inferences that the Commonwealth urges may be drawn improperly and would require the use of conjecture, the second and third indictments cannot stand and further prosecution is barred.[20]

---

[18]We do not find such an inference inescapable. There was no testimony concerning the type of camera used and whether its "zoom" feature could have been automatically triggered as opposed to requiring human operation.

[19]There was no evidence that Kincaid and Lampron appeared in the videotape together. Also, although laughter was recorded on the videotape from a source other than the person depicted thereon, there was no evidence that this laughter came from the defendant or sounded like it came from the defendant. The defendant was not heard on the videotape, nor did he appear on it.

[20]We add that, with respect to the second and third indictments, there was

b. *Lesser included offense of rape charged in the first indictment.* We agree with the Superior Court judge and the Appeals Court in rejecting the defendant's contention that the Commonwealth presented insufficient evidence with respect to the lesser included offense of rape as charged in the first indictment. "While generally for the crime of rape the Commonwealth must prove that the alleged sexual intercourse occurred by force and without the complainant's consent, where [as was alleged in this case] the complainant is 'wholly insensible so as to be incapable of consenting,' (a) the element of lack of consent is satisfied; and (b) the only force required for proof of the crime is 'such force as was necessary to accomplish' the act of intercourse — that is, only the force necessary to effect penetration." *Commonwealth* v. *Blache,* 450 Mass. 583, 589 (2008), quoting *Commonwealth* v. *Burke,* 105 Mass. 376, 380-381 (1870). Contrary to the defendant's assertion, the Commonwealth did not fail to prove both penetration and lack of consent.

"Penetration can be inferred from circumstantial evidence." *Commonwealth* v. *Fowler,* 431 Mass. 30, 33 (2000). Here, there was evidence that a hair tie had been inserted into Gail's vagina on September 23 or September 24, at the defendant's house. This evidence included testimony that a portion of the videotape showed Lampron inserting an object inside Gail's vagina. In addition, DNA testing showed that the defendant could not be excluded as a possible secondary donor of the sperm fraction extracted from the hair tie (which Gail had removed from her vagina on September 24) and plastic bag sample. The statistical significance of the DNA testing results was presented to the

insufficient evidence (for the reasons set forth above) that the defendant "knowingly participated" in the commission of the acts, see *Commonwealth* v. *Zanetti,* 454 Mass. 449, 468 (2009). We take this opportunity to restate that the only prospective application of the principles announced in our *Zanetti* decision pertains to our recommended jury instruction. See *Commonwealth* v. *Zanetti, supra* at 467 & n.21. Sufficiency of the evidence claims regarding joint venture should be evaluated conformably with what we clarified in the *Zanetti* case. See *id.* at 468 ("Now . . . on appeal after a conviction, we will examine whether the evidence is sufficient to permit a rational juror to conclude beyond a reasonable doubt that the defendant knowingly participated in the commission of the crime charged, with the intent required to commit the crime"). See also *Commonwealth* v. *Miranda,* 458 Mass. 100, 113-114 (2010) (applying *Zanetti* to sufficiency of evidence claim); *Commonwealth* v. *Beneche,* 458 Mass. 61, 70 (2010) (same).

jury. See note 13, *supra.* From this evidence, it was reasonable and possible for a jury to conclude that the defendant had penile-vaginal sexual intercourse with Gail on September 23 or September 24. See *id.* at 32, 33-34 (presence of sperm in victim's mouth was sufficient to prove oral penetration beyond reasonable doubt); *Commonwealth* v. *Tavares,* 27 Mass. App. Ct. 637, 642 (1989) (semen, piece of twig, and dirt found in victim's vagina was sufficient evidence to find penetration beyond reasonable doubt). See also *Commonwealth* v. *Bennett,* 424 Mass. 64, 68 (1997) (inferences need not be necessary, only reasonable and possible). Although Gail acknowledged having had *consensual* sexual intercourse with the defendant that summer, and the Commonwealth's expert was unable to say whether the defendant's semen came from the hair tie or the plastic bag, such matters pertain to the weight of the evidence, not its sufficiency. Indeed, a jury reasonably could infer that the semen recovered from the plastic bag had come from the semen on the hair tie that had been placed into the plastic bag. They also reasonably could infer that the presence of the defendant's sperm cell DNA on the hair tie removed from Gail's vagina on September 24 resulted from penetration that occurred on September 23 or 24, and not from the defendant's consensual sexual encounter with Gail during the summer of 1998.

There also was sufficient evidence from which a jury could infer that Gail lacked the capacity to consent to sexual intercourse with the defendant on September 23 or 24. If a complainant is "wholly insensible so as to be incapable of consenting," *Commonwealth* v. *Blache, supra,* quoting *Commonwealth* v. *Burke, supra,* and the defendant is aware of the complainant's incapacitated state, see *Commonwealth* v. *Blache, supra*; *Commonwealth* v. *Burke, supra,* the element of lack of consent is satisfied.[21] Here, there was evidence that, in the defendant's presence, Gail visibly was physically impaired at the bar, as her legs were "giving out" and she walked as if she were "drunk." There also

___

[21]Although our refinement of what constitutes incapacity to consent, see *Commonwealth* v. *Blache,* 450 Mass. 583, 597 (2008), occurred after the defendant's trial, the Commonwealth's evidence was sufficient under the standards articulated in both *Commonwealth* v. *Blache, supra,* and *Commonwealth* v. *Burke,* 105 Mass. 376, 380-381 (1870), to establish Gail's incapacity to consent.

was evidence that Gail was unable physically to resist or to move during Kincaid's and Lampron's sexual encounters with her, either during the night or daytime; that she felt confused while at the defendant's house; that she later determined that she was missing prescription medication that she had with her at the bar in her purse; that she later determined that there was a hair tie lodged inside her vagina; and she had no memory of any sexual act with the defendant. From this evidence, a jury reasonably could conclude that, because of the ingestion of alcohol or drugs (or both), Gail was "wholly insensible so as to be incapable of consenting" or "so impaired as to be incapable of consenting" to intercourse with the defendant, see *Commonwealth* v. *Blache, supra* at 589, 592-593 n.14, during the period she was at the defendant's house, and that the defendant knew of her incapacity to consent to sexual intercourse when he penetrated her, see *id.* at 592-593 & n.15.

3. *Conclusion.* For the reasons stated above, we affirm the order of the Superior Court judge allowing the defendant's motion to dismiss the second and third indictments, and dismissing only so much of the first indictment as alleged aggravated rape. The case is remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*