NOTICE: All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports. If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

18-P-687                                    Appeals Court


COMMONWEALTH  vs.  JORGE PENA.


No. 18-P-687.

Suffolk.      April 8, 2019. - December 5, 2019.

Present:  Vuono, Wolohojian, & Hand, JJ.


Rape.  Unnatural Sexual Intercourse.  Constitutional Law,
    Confrontation of witnesses.  Evidence, First complaint.
    Practice, Criminal, Confrontation of witnesses, Argument by
    prosecutor, Instructions to jury.



Indictments found and returned in the Superior Court
Department on March 9, 2016.

The cases were tried before Edward P. Leibensperger, J.


Joseph Visone for the defendant.
Amanda Teo, Assistant District Attorney (Sarah McEvoy,
Assistant District Attorney, also present) for the Commonwealth.


VUONO, J.  A jury in the Superior Court convicted the

defendant on two indictments charging him with rape of a child

aggravated by age difference.[1]  The victim, whom we shall call

_____

    [1] The defendant also was convicted of two counts of indecent
assault and battery on a child under the age of fourteen.  The

Alice, is the daughter of the woman with whom the defendant was living. One indictment charged rape by natural sexual intercourse. The other charged rape by unnatural sexual intercourse.

The defendant raises three issues on appeal. First, he contends that the judge erred by admitting testimony under the first complaint doctrine from a witness who was not the first person to hear of the rapes. Second, the defendant claims the evidence was insufficient to support his conviction on the indictment charging unnatural sexual intercourse because the Commonwealth failed to prove the element of penetration. That indictment alleged that the defendant "did unlawfully have unnatural sexual intercourse with and abuse [Alice] by penetrating the mouth of [Alice] with his ejaculate." Third, he asserts the prosecutor improperly vouched for Alice's credibility during her closing argument. We affirm.

1. Background. a. The Commonwealth's case. We summarize the evidence presented in the Commonwealth's case-in-chief in the light most favorable to the Commonwealth. See Commonwealth v. Latimore, 378 Mass. 671, 677 (1979). Alice was living in an apartment in the Dorchester section of Boston with her mother and her three sisters when the defendant began to sexually abuse

judge allowed the defendant's motion for a required finding of not guilty on a third count charging this offense.

her.  Alice was eleven years old at the time.  The family was under significant stress because Alice's mother was ill and not able to work, Alice's thirteen year old sister was diagnosed with a neurodegenerative disorder, and Alice's younger sisters, five year old twins, needed supervision and care.  The defendant, who had been involved in a romantic relationship with Alice's mother for about ten years, was the family's main source of financial support.

Alice testified that the defendant sexually abused her on three occasions while she was in the sixth grade.  On the first occasion, Alice found herself home alone with the defendant and her older sister one day after school.  At the time, the sister could not walk without assistance.  The defendant took Alice to the bedroom he shared with Alice's mother and began to fondle her.  He touched Alice's breasts and kissed her on the lips.

The second incident started the same way.  Alice and her older sister were home alone with the defendant; the defendant took Alice into the bedroom where he touched her breasts and kissed her.  This time, however, the defendant proceeded to remove Alice's pants and underwear and "put" her on the bed.  He then raped Alice by inserting his penis into her vagina.  Next, he told Alice to get onto the floor on her knees and open her mouth.  When she did so, he ejaculated into her mouth.  Alice testified that the defendant "put [ejaculate] in my mouth."  She

then "threw up [the ejaculate] in the bathroom." The defendant told Alice not to tell anyone and suggested that the family would be ashamed of her. Alice felt guilty and kept silent.

The third incident occurred when Alice's mother and older sister were in California, where the older sister was receiving experimental medical treatment, and Alice and her younger sisters were staying with an aunt. One of the sisters became ill and needed medicine from home. The defendant drove Alice from her aunt's home to the family's apartment to retrieve the medicine. While the defendant and Alice were alone in the apartment, the defendant pulled Alice into the mother's bedroom and had sexual intercourse with her.[2] This time the defendant ejaculated onto his hand. The defendant told Alice not to tell anyone and instructed her to tell her aunt that they were late due to traffic and because they had trouble opening the door of the apartment. Alice followed the defendant's instructions.

Alice continued to remain silent about the sexual abuse until the end of the school year when she met her mother's younger brother, Manuel Valdez. Valdez had just moved to Boston and met Alice for the first time. Alice sent Valdez a number of graphic text messages telling him that she wanted "to have sex" with him. She also wrote that she wanted to "suck him off,"

---

[2] The defendant was not charged with rape in connection with this incident for reasons that are not apparent in the record.

"twerk in front of him," "do doggie," and "do it in the bathroom."  Valdez was taken aback and asked Alice how she knew about such things.  Alice responded with a text message stating that she "had sex" with the defendant.  Valdez sought advice from his brother, Cristino Jimenez Medina,[3] and showed him the text messages.  At some point, Alice's mother was told about the text messages and Alice's accusation.  She confronted Alice.  Initially, Alice denied what had happened between her and the defendant, but she subsequently told her mother about the abuse.

Alice's mother was not supportive.  She told Alice to lie to investigators from the Department of Children and Families when they came to the home to interview her.  Alice's mother said that if Alice disclosed the abuse, her sisters would be taken away.  At her mother's direction, Alice also denied the abuse to health care providers at the Bowdoin Street Health Center.

b.  The defendant's case.  The defendant mounted a vigorous defense.  He testified on his own behalf and denied the allegations.  The defense theory was that Alice was not credible.  To this end, the defendant introduced testimony from numerous witnesses to demonstrate inconsistencies in Alice's

---

[3] Medina is identified as "Cristino Jimenez" in the transcript. We therefore refer to him as "Jimenez" to avoid confusion.

testimony and presented deposition testimony from Alice's mother, who claimed that the defendant was rarely home alone with the girls.[4]  He also presented evidence through testimony and photographs that Alice was not truthful when she testified his penis looked "normal" because he had a "domino chip" embedded subcutaneously into his penis and it was noticeable. Defense counsel argued in closing that Alice felt overwhelmed by her family's situation and fabricated the abuse in order to gain attention.  Defense counsel also argued that an additional motive for Alice to lie was to avoid admitting that she was familiar with sexual activity because she had watched pornography.

2.  Discussion. a.  First complaint testimony.  As previously noted, Alice first disclosed the defendant's sexual abuse in a series of text messages she sent to her uncle, Valdez, who, in turn, showed the messages to his brother, Jimenez.  By the time of trial, the text messages no longer existed and Valdez was unavailable to testify because he was incarcerated out of state.  These circumstances led the Commonwealth to file a motion in limine seeking permission to call Jimenez as a substitute first complaint witness.  At a nonevidentiary hearing on the motion, before the judge who

---

[4] Alice's mother was too ill to attend the trial.

presided at trial, defense counsel stated that he did not object as long as Jimenez testified about all the text messages, including those in which Alice had made sexually provocative comments.[5]  The prosecutor agreed to this condition and the judge allowed the motion.  Jimenez subsequently testified at trial without objection.

The defendant now argues that the judge should not have permitted Jimenez to testify as a substitute first complaint witness for two reasons:  first, the defendant claims that the testimony was inadmissible hearsay; and second, he argues that his right to confront witnesses against him, under the Sixth Amendment to the United States Constitution, was violated because he could not cross-examine Valdez.  As neither claim was preserved at trial, we consider the defendant's arguments under the substantial risk of miscarriage of justice standard. Commonwealth v. Alphas, 430 Mass. 8, 13 (1999).  Under that standard, an error creates a substantial risk of a miscarriage of justice "unless we are persuaded that it did not 'materially influence[]' the guilty verdict."  Id., quoting Commonwealth v. Freeman, 352 Mass. 556, 564 (1967).  Applying this standard to

---

[5] We note that some of the text messages were translated from English to Spanish by Valdez when he showed the messages to Jimenez.  The defendant has not made a meaningful challenge to the accuracy of those translations.

this case, we conclude that neither alleged error warrants vacating the convictions.

To begin with, the rule against hearsay was not implicated because first complaint evidence may be considered only for specific limited purposes and not for the truth of the matter asserted, namely, that the assault in fact occurred. See Commonwealth v. King, 445 Mass. 217, 218-219 (2005), cert. denied, 546 U.S. 1216 (2006); Mass. G. Evid. § 413(a) (2019). Furthermore, the judge acted within his discretion when, after determining that Valdez was not available, the judge permitted Jimenez to testify as the substitute first complaint witness. See King, supra at 243-244 ("In limited circumstances, a judge may permit the testimony of a complaint witness other than, and in lieu of, the very 'first' complaint witness. For example, where the first person told of the alleged assault is unavailable, . . . the judge may exercise discretion in allowing one other complaint witness to testify"). See also Commonwealth v. Murungu, 450 Mass. 441, 445-446 (2008). Here, the judge properly informed the jury that Jimenez was testifying instead of Valdez because Valdez was not available, and the judge instructed them, in accordance with King, about the limited purpose of first complaint testimony. He explained that the testimony was admitted only to assist the jury in determining whether to credit Alice's testimony about the sexual assaults

and could not be used as evidence that the assaults occurred. This instruction was given when Alice testified about the text messages and was repeated during Jimenez's testimony and in the judge's final instructions.  In light of these circumstances, we discern no merit in the defendant's argument that the admission of Jimenez's testimony was an error that created a substantial risk of a miscarriage of justice.

The defendant's claim that he is entitled to a new trial because he did not have the opportunity to cross-examine Valdez also fails.  First, as we have noted, the defendant waived his right to cross-examine Valdez by agreeing to the Commonwealth's request to have Jimenez testify as the substitute first complaint witness.  This was a wise tactical decision.  The defendant clearly benefited from Valdez's absence.  Jimenez either was not willing or could not provide the details of Alice's disclosure of sexual abuse when he was asked to do so by the prosecutor, but he relayed in detail Alice's inappropriate comments soliciting sexual activity with Valdez.  We note that, in her closing argument, defense counsel relied heavily on Alice's graphic invitation to engage in sexual acts with Valdez in order to discredit Alice.  In addition, the defendant was not totally deprived of his right to confront witnesses against him. He had the opportunity to cross-examine both Alice and Jimenez. Thus, "the purpose and value of confrontation" were sufficiently

served.  Commonwealth v. Amirault, 424 Mass. 618, 651-652 (1997).  Consequently, we are confident that even if there was error, it did not materially influence the guilty verdict.  See Alphas, 430 Mass. at 13.[6]

b.  Sufficiency of the evidence of unnatural sexual intercourse.  The defendant argues the evidence was insufficient to sustain a conviction on the indictment charging him with rape by unnatural sexual intercourse because the Commonwealth failed to prove the element of penetration.  The defendant does not dispute that the jury were warranted in finding beyond a reasonable doubt that his ejaculate entered Alice's mouth.  He claims, however, that such conduct does not establish penetration without evidence of "skin to skin" contact.

The defendant's argument has both legal and factual underpinnings.  We first address his legal argument, with which we disagree, that the conduct at issue, as a matter of law, does not constitute the crime of rape.

While it is true that convictions of rape are frequently proven with evidence demonstrating some degree of penetration that involves skin-to-skin contact between the perpetrator and

---

[6] The case might stand on a different footing if there was an allegation that the text messages were inaccurately conveyed from Valdez to Jimenez, but there was no such allegation.  In light of the surrounding circumstances, including that Alice's testimony and Jimenez's testimony were largely similar, we need not discuss this issue further.

the victim, our cases do not require such evidence to prove the element of penetration in the context of unnatural sexual intercourse.

Recently, in Commonwealth v. Prado, 94 Mass. App. Ct. 253, 261 (2018), we held that a defendant who forced the victim at gunpoint to penetrate her vagina with her fingers was guilty of rape. As we explained in that case, "the scope of the term 'unnatural sexual intercourse' is broad, and . . . the Legislature necessarily intended to treat modes of sexual connection other than common law rape as equally serious invasions of personal integrity" (quotation and citation omitted). Id. at 257. "[O]ur precedent recognizes the myriad ways by which rape is perpetrated, even without physical contact by the defendant." Id. at 258. "The common thread in these cases is some form of forced penetration compelled by the defendant, and not a literal touching by the defendant." Id. The essence of the crime of rape is "an intrusion into another's (i.e., the victim's) [body], by an object . . . committed through the force of the defendant." Id. We held in Prado that the defendant's choice to penetrate the victim with her own fingers did not render the act a lesser crime on the defendant's part. Id. at 259. We have held the same in cases where a defendant forced a third party to penetrate the victim or where the penetration was perpetrated through the use of a foreign

object.  See Commonwealth v. Cifizzari, 397 Mass. 560, 577 (1986) ("rape committed by unnatural sexual intercourse encompasses penetration by the use of inanimate objects," here, mop handle); Commonwealth v. Nuby, 32 Mass. App. Ct. 360, 362 (1992) (defendant forced third party to penetrate victim's vagina with his tongue and fingers).  See also Commonwealth v. Jansen, 459 Mass. 21, 29 (2011) (penetration could be inferred from evidence of hair tie found in victim's vagina because hair tie tested positive for defendant's deoxyribonucleic acid); Commonwealth v. Guy, 24 Mass. App. Ct. 783, 785-787 (1987) (defendants guilty of rape for forcing victim to perform cunnilingus on two consenting women).

Here, the evidence was that during the course of a sexual assault the defendant caused his ejaculate to enter Alice's mouth.  Thus, there was physical penetration between the defendant and Alice.  The deposit of ejaculate into the mouth of a victim is a "mode[] of sexual connection" that involves a "serious invasion[] of personal integrity."  Prado, 94 Mass. App. Ct. at 257.  In our view, such conduct is no less physically intrusive than committing rape by forcing a victim to penetrate her vagina with her fingers or by using a foreign object to penetrate the victim.  See id. at 258; Nuby, 32 Mass. App. Ct. at 362; Guy, 24 Mass. App. Ct. at 787.  See also Jansen, 459 Mass. at 29; Cifizzari, 397 Mass. at 576-578.  We

therefore conclude, as a matter of law, that the defendant's conduct falls within the broad definition of unnatural sexual intercourse.

The defendant also argues that there was insufficient evidence of penetration given the absence of direct evidence of skin-to-skin contact between himself and Alice. But direct evidence of skin-to-skin contact is not required; "[p]enetration can be inferred from circumstantial evidence." Commonwealth v. Fowler, 431 Mass. 30, 33 (2000).[7] The Commonwealth maintains that a rational juror could infer beyond a reasonable doubt that there was contact between the defendant's penis and Alice's mouth when the defendant ejaculated. Such contact, the Commonwealth argues, was sufficient to prove the element of penetration. See Commonwealth v. Enimpah, 81 Mass. App. Ct. 657, 660-661 (2012) (to meet its burden of proof for offense of rape, Commonwealth must present evidence of penetration of victim, regardless of degree). Additionally, the Commonwealth notes that our case law recognizes that "when young children testify about sexual assault, their description of penetration need not be precise." King, 445 Mass. at 224. Given our conclusion above that the facts constituted a mode of sexual

---

[7] The Commonwealth can prove its case by direct evidence or solely by circumstantial evidence as long as the inferences drawn from the evidence are "reasonable and possible" (citation omitted). Commonwealth v. Robertson, 408 Mass. 747, 755 (1990).

connection, it is not necessary for us to decide whether the circumstantial evidence here, taken in the light most favorable to the Commonwealth, would permit an inference of skin-to-skin contact and, as a result, established penetration.

c. Prosecutor's closing argument. During its case-in-chief, the Commonwealth presented testimony from Dr. Stephanie Block, an expert on child sexual abuse, to assist the jury in understanding certain aspects of Alice's behavior. Block testified about the general behavioral characteristics common in sexually abused children. In her closing argument, the prosecutor urged the jury to consider Block's testimony in evaluating Alice's credibility:

> "[T]hink about Dr. Stephanie [Block] who testified she knows nothing about this case. . . . Her testimony was to inform you, to help you understand the research and the way in which child victims of sexual abuse disclose or delay or recant and the factors that . . . the research has shown matters to child victims of sexual abuse. And I'd ask you to think about what she told you as you consider the Commonwealth's case, as you evaluate the credibility of witnesses. . . . She gave you a lot of information about it, and I'd ask you to keep that in the back of your mind as you evaluate the Commonwealth's case."

Defense counsel objected to these remarks, claiming that the prosecutor had impermissibly vouched for Alice's credibility. We therefore review the defendant's claim under the prejudicial error standard, see Commonwealth v. Flebotte, 417 Mass. 348, 353 (1994), and "evaluate whether the defendant was prejudiced

thereby, considering the remarks in the context of the entire argument, the trial testimony, and the judge's instructions to the jury." Commonwealth v. Beaudry, 445 Mass. 577, 584 (2005).

The prosecutor's comments were well within the bounds of proper argument and did not constitute error. See Mass. G. Evid. § 1113(b)(2) (2019). The prosecutor did not suggest that she or Block had personal knowledge or a personal belief that Alice was telling the truth, nor did the prosecutor misstate Block's testimony or make an appeal for sympathy. To the contrary, the prosecutor appropriately asked the jury to consider Block's testimony to the extent it might help them in assessing Alice's credibility. Even if there was error, we conclude that it was not prejudicial in light of the judge's forceful instruction to the jury that an expert witness should be treated like any other witness, and in light of the judge's emphasis on the jury's role as the finders of fact. As the judge put it, "You must remember expert witnesses do not decide cases. Juries do." The judge also instructed the jury that closing arguments are not evidence.

Judgments affirmed.